**WALLING, Administrator, Wage and Hour Division, United States Department of Labor, v. LA BELLE S. S. CO.**

No. 9816.

Circuit Court of Appeals, Sixth Circuit.

March 26, 1945.

Bessie Margolin, of Washington, D. C. (Douglas B. Maggs, of Washington, D. C., Charles A. Reynard, of Cleveland, Ohio, and Flora G. Chudson, of Washington, D. C., on the brief), for appellant.

Gilbert R. Johnson, of Cleveland, Ohio (Johnson & Branand, of Cleveland, Ohio, on the brief), for appellee.

Before HAMILTON, MARTIN, and McALLISTER, Circuit Judges.

HAMILTON, Circuit Judge.

The Fair Labor Standards Act, 29 U.S. C.A. § 209, provides that for the purpose of any hearing or investigation authorized under the Act, the provisions of Sections 9 and 10 of the Federal Trade Commission Act, 15 U.S.C.A. §§ 49, 50, relating to the production of books, papers and documents, shall be applicable to the jurisdiction, powers and duties of the Administrator of the Wage and Hour Division. The applicable provisions in substance provide that the Commission, or its duly authorized agent or agents, for the purpose of examination and the right to copy, shall, at all reasonable times, have access to any documentary evidence of any corporation being investigated or proceeded against and the Commission shall have the power to require by subpoena the attendance and testimony of witnesses and the production of all such documentary evidence relating to any mat-

ter under investigation. In the case of subpoena disobedience, the Commission may invoke the aid of any court of the United States of competent jurisdiction, to require the attendance and testimony of witnesses and the production of documentary evidence.

Appellee, the LaBelle Steamship Company, is a corporation organized and existing under the laws of the State of Delaware, with its office and principal place of business at Cleveland, Ohio. Appellee operates the Steamship LaBelle in the transportation and freighting of cargo between ports on the Great Lakes.

Appellant, for the purpose of ascertaining whether or not appellee in the conduct of its business was amenable to the provisions of the Fair Labor Standards Act, demanded access to the books and records of appellee, which demand was refused. Thereupon, appellant applied to the District Court for an order directed to appellee to compel production of the documents and records. Appellee answered and stated that it was engaged in interstate commerce, but that all of its employees were seamen and as such were exempt under Section 13(a), 29 U.S.C.A. § 213(a) of the Fair Labor Standards Act. Appellant refusing to plead further, the District Court dismissed his application on the ground that the Administrator of the Wage and Hour Division did not have an absolute right to a compliance order from the District Court for the enforcement of an investigatory subpoena duces tecum under Sections 9 and 11(a) of the Act, 29 U.S. C.A. § 201 et seq., without regard as to whether appellee in the conduct of its business was actually under the Act. In other words, the trial court decided that appellee was entitled to have tried out formally and adjudicated in the District Court as a prerequisite to the issuance of a subpoena duces tecum whether its employees were within the coverage of the Act.

Section 213(a) of the Fair Labor Standards Act provides in part "the provisions of sections 206 and 207 * * * shall not apply with respect to * * * (3) any employee employed as a seaman." Section 206 establishes minimum wages and Section 207 establishes maximum hours. Section 212 of the Act concerns child labor and Section 214, apprentices. Section 211 (a) authorizes the Administrator to investigate any industry subject to the Act or

he may investigate any matter which he deems necessary or appropriate to determine whether any person has violated the Act or any matter which may aid in its enforcement. The Act covers all persons engaged in interstate commerce or the production of goods for such commerce.

It plainly appears that appellee is engaged in a business within the provisions of the Act and the issue presented is whether it may prevent appellant from investigating appellee's business until there has been an adjudication of whether or not its employees are excluded from the coverage of the Act.

The authority to inspect, to secure or to require the disclosure of information by means of accounts, records or otherwise, is a characteristic of the powers often conferred on boards and commissions as an adjunct of their regulatory authority. These boards, in inspecting, are not exercising a quasi-judicial function but are engaged actually in enforcing administrative determinations and, unlike courts, they have the facilities to investigate and to initiate action, more or less informally finding the facts which, under the law, justify legal action in a court. They have no authority to declare the law, only to ascertain the facts. Under the Fair Labor Standards Act, 29 U.S.C.A. § 210(a), any person aggrieved by an order of the Administrator may obtain a review of such an order in the Circuit Court of Appeals of the United States in the Circuit where such person resides or has his principal place of business, and under Section 217 the Administrator must resort to the injunctive processes of the court for the enforcement of his orders. Thus it is that if the Administrator, in the course of his investigation, proceeds beyond his jurisdiction or makes a wrong decision, his error may be corrected later in a judicial proceeding before the order becomes effective.

In the performance of the Administrator's function, he must make investigations to obtain facts in order to effectuate the purposes of the statute and to decide the controversies coming before him. The necessity of such investigations imports the power to compel answers in order to obtain material information. The visitorial power of the Administrator over corporations and others affected is not exactly the same as the subpoena power of the courts or the power to grant a bill of discovery. Something more is comprehended under the Act than the mere right to have competent and relevant evidence produced in the trial of a cause. The scope of the examining power in judicial proceedings is ordinarily determined by the questions of fact in a particular controversy which furnish a definite criterion of relevancy. Where an administrative examining power such as we have here is exercised, its scope has a somewhat similar aspect, but the criterion of relevancy is found in the purpose of the statute. The inquiries undertaken are with the view of obtaining information which will permit more intelligent action with regard to the performance of administrative powers or duties without regard to any wrong. Such inquiries may not be based on mere suspicion of delinquency, but must have some reasonable probability of a statutory violation. Federal Trade Commission v. American Tobacco Company, 264 U.S. 298, 307, 44 S. Ct. 336, 68 L.Ed. 696, 32 A.L.R. 786.

Under Section 211(a) the Administrator is authorized to investigate and gather data regarding the wages, hours, conditions and practices of employment in any industry subject to the Act. Under Section 211(c) every employer subject to the provisions of the Act is required to keep and preserve such records of the persons employed by him and the wages, hours and other conditions and practices of employment maintained by him and preserve such records for such periods of time and make such reports therefrom to the Administrator as he shall prescribe by regulation or order as being necessary or appropriate for the enforcement of the Act. When viewed in the light of the purpose of the statute, it is clear the Administrator could not enforce its provisions wisely or effectively in the absence of the power to determine what employers are affected by the Act, and where the Administrator does not himself possess the requisite information, recourse must be had to others who do possess it. Experience has taught that mere requests for such information often are unavailing and also that information which is voluntary is not always accurate or complete, so some means of compulsion are essential to obtain what is needed, if the Act is to be fairly applied without discrimination, and so Congress, considering these matters, gave to the Administrator a broad power of inquiry with enforcing process. This power of inquiry may not be abusively or oppressively ex-

erted. Upon the institution of proceedings by the Administrator for the enforcement of his subpoenas, the parties against whom such proceedings are brought are entitled to have finally determined any legal reason why enforcement should be withheld. Such questions include the competence of the officer or procedures by whom or through whom the subpoena has been issued and the authority or jurisdiction of the Administrator over the subject matter to which the proposed evidence is directed, but when it is made to appear that the Administrator is proceeding in good faith, the issue as to whether the employer is in fact under the provisions of the Act becomes immaterial.

■ The court must apply any constitutional limitations upon the scope of the subpoena which may involve the place at which the evidence is to be introduced, and the relevance of the evidence sought. Interstate Commerce Commission v. Brimson, 154 U.S. 447, 476, 14 S.Ct. 1125, 38 L.Ed. 1047; Federal Trade Commission v. Claire Company, 274 U.S. 160, 173, 47 S.Ct. 553, 71 L.Ed. 978; Myers v. Bethlehem Shipbuilding Corporation, 303 U.S. 41, 49, 58 S.Ct. 459, 82 L.Ed. 638; Cudahy Packing Co. v. Holland, 315 U.S. 357, 360, 62 S. Ct. 651, 86 L.Ed. 895; Federal Powers Commission v. Edison Company, 304 U.S. 375, 386, 58 S.Ct. 963, 82 L.Ed. 1408; Jones v. Securities and Exchange Commission, 298 U.S. 1, 25, 56 S.Ct. 654, 80 L.Ed. 1015; Endicott Johnson Corporation v. Perkins, 317 U.S. 501, 507, 63 S.Ct. 339, 87 L.Ed. 424.

■ The purpose of the evidence should be to aid in the enforcement of the Act and its scope should encompass that purpose only. The courts are authorized to define and declare the limitation of the power of investigation under the statute.

The statute gives the Administrator the power to resort to the courts for the enforcement of his orders and for the purpose of instituting such proceedings, he has the power to investigate or examine the books or records of any employer or to interrogate any person, where he has reasonable grounds to believe that such employer is under the provisions of the Act or that such person has information essential to the investigation.

As the Congress has all legislative power, it can authorize the executive branch of the Government to make investigations and to take testimony, in order to enforce its own laws. Any prohibition against this power must be found in the Constitution. Through its legislative department the United States can examine witnesses with reference to prospective legislation and a fortiori it can, through its executive department under appropriate action on the part of the judiciary, examine witnesses, books and records in order to establish in court, rights belonging to all or a part of its citizens. McGrain v. Daugherty, 273 U.S. 135, 181, 47 S.Ct. 319, 71 L.Ed. 580, 50 A.L.R. 1. There is no fact in the record showing that the Administrator proposes to go on a governmental fishing expedition or that he intends to pry into the private papers of appellee on the possibility they may disclose that appellee has violated the provisions of the Act; nor is there any showing the Administrator is imposing an onerous or unnecessary burden on appellee or that the evidence sought is not material to the issue as to whether or not appellee is engaged in a business within the ambit of the Act.

■■ While jurisdiction is essential to give validity to the determination of administrative authorities and, without jurisdiction, their acts are void and open to collateral attack, vesting in such authorities exclusive initial power to determine whether authorities have jurisdiction is not a violation of constitutional rights, where there is provision for adequate judicial review before the orders of such authority become final or effective. As we view the statute, the Administrator is called upon first to determine as a necessary prerequisite to the finding of a violation of the statute, that the employer is engaged in interstate commerce or the production of goods in such commerce and employs persons who are not exempt under the Act, and since in most cases the Administrator must proceed only on knowledge and belief when he seeks the examination of books, records and papers or witnesses, to establish the jurisdictional facts definitely, he is entitled to the desired order without the necessity of an actual showing that the employer proceeded against is clearly within the provisions of the Act. Myers v. Bethlehem Shipbuilding Corporation, 303 U.S. 41, 50, 58 S.Ct. 459, 82 L.Ed. 638; Newport News Shipbuilding Company v. Schauffler, 303 U.S. 54, 58, 58 S.Ct. 466, 82 L.Ed. 646.

The examining power of the Federal Trade Commission was passed upon by the Supreme Court in the case of Federal Trade Commission v. American Tobacco Company, supra. The Commission desired the production of records, contracts, memoranda and correspondence for inspection and making copies and petitioned the court accordingly. The petition was denied by the District Court and the denial upheld by the Supreme Court. The Supreme Court based its decision on the fact that the statute did not authorize "fishing expeditions" into private papers on the possibility that they might disclose evidence of a crime. It stressed the provision of the Act that the right of access related only to documentary evidence so that before the subpoena could issue there must be some ground for supposing that the documents called for contained evidence pertinent to a violation of the statute. The court also said [264 U.S. 298, 44 S.Ct. 337]: "The question is a different one where the State granting the charter gives its Commission power to inspect." This observation would place the examining powers of the Administrator of the Wage and Hour Division on a different footing because under the statute the officer is given the specific power to inspect the books and records of employers and require them to make reports. The power of the Administrator is statutorily different from that of the Federal Trade Commission. The Federal Trade Commission Act is integrated with the Fair Labor Standards Act to the extent only of statutory procedure for the enforcement of the Administrator's subpoena powers. In our opinion the cited case has no application to the case at bar.

In the case of Endicott Johnson Corporation v. Perkins, supra, upon an application by the Secretary of Labor to a Federal District Court for the enforcement of a subpoena duces tecum issued by the Secretary in pursuance of an investigation of alleged violations of the Walsh-Healey Public Contracts Act, and requiring the production of payrolls and similar records relating to plants of the contractor other than those specified in the contract, the employer resisted issuance of the subpoena on the ground that the persons employed in the plants and the records of employment which were sought by subpoena were not covered by the Act or by the contracts entered into pursuant thereto. The Act in question applied to all persons employed by the contractor in the manufacture or furnishing of materials, supplies or articles of equipment used in the performance of the contract. 41 U.S.C.A. § 35(b-e).

The Secretary of Labor is authorized under the statute upon his own motion or upon the application of any person affected by the ruling of any agency of the United States in relation to any proposal or any contract, to hold hearings and to issue orders requiring the attendance and testimony of witnesses and the production of evidence under oath. In case of contumacy of any witness the Secretary is authorized to apply to a District Court for the enforcement of his subpoenas. 41 U.S.C.A. § 39.

The Supreme Court on the facts in the Endicott-Johnson case, held that the District Court was without authority to decide the question of coverage in the proceeding for a compulsory order of witness attendance and said [317 U.S. 501, 63 S.Ct. 343]: "The matter which the Secretary was investigating and was authorized to investigate was an alleged violation of this Act and these contracts. Her scope would include determining what employees these contracts and the Act covered."

The Walsh-Healey Act commits to the Secretary of Labor the issue of coverage of employees by employers doing business by voluntary contract with the United States Government. The ultimate issue of coverage under the Fair Labor Standards Act is a judicial question committed to the courts. Because of this distinction, the Endicott-Johnson case is distinguishable from the case at bar. Oklahoma Press Publishing Company v. Walling, 10 Cir., 658 F.2d 147.

In the case of General Tobacco & Grocery Company v. Fleming, 6 Cir., 125 F.2d 596, 140 A.L.R. 783, we decided that in a proceeding by the Administrator of the Wages and Hours Division of the Fair Labor Standards Act to compel an employer to produce certain of its records demanded by a subpoena duces tecum issued by the Administrator that the court, as a prerequisite to the issuance of its order, could determine whether the employer was engaged in interstate commerce or the production of goods for such commerce. Appellee urges on us that our decision in the cited case is controlling here. In view of the decision of the Supreme Court in the cases of Myers v. Bethlehem Shipbuild-

ing Corporation, supra; Newport News Company v. Schauffler, supra; and the Endicott-Johnson case, and the difference in facts between the case at bar and the General Tobacco case, the latter is not an authority here. Here appellee admits it is engaged in interstate commerce and its defense is in reality the claim of an exemption of its employees under the Act, because each of them is a seaman.

The order of the District Court is reversed and the cause remanded, with directions to grant the relief prayed by appellant.