**HUNT FOODS AND INDUSTRIES, INC.,**
Appellant,

v.

**FEDERAL TRADE COMMISSION,**
Appellee.

No. 16751.

United States Court of Appeals
Ninth Circuit.

Dec. 15, 1960.

As Amended on Denial of Rehearing
Jan. 20, 1961.

Bert W. Levit, Victor B. Levit, Long & Levit, San Francisco, Cal., for appellant.

Daniel J. McCauley, Jr., Gen. Counsel, Alan B. Hobbes, Asst. Gen. Counsel, Carleton A. Harkrader, Washington, D. C., Atty., for Federal Trade Commission.

Before CHAMBERS, HAMLEY and HAMLIN, Circuit Judges.

HAMLEY, Circuit Judge.

Hunt Foods and Industries, Inc., appeals from a district court order enforcing a subpoena *duces tecum* issued by the Federal Trade Commission. The district court order was issued pursuant to an opinion reported in Federal Trade Commission v. Hunt Foods and Industries, Inc., 178 F.Supp. 448.

Prior to the issuance of the subpoena the Commission instituted an investigation (Federal Trade Commission File No. 5810044) to determine whether Hunt or its predecessors were violating section 5 of the Federal Trade Commission Act, as amended, 15 U.S.C.A. § 45, or section 2 (a) and (d) of the Clayton Act, as amended, 15 U.S.C.A. § 13(a) (d).[1]

In the course of this investigation the Commission issued and thereafter served upon Hunt by registered mail the subpoena in question. By this subpoena Hunt was directed to appear before named attorney-examiners of the Commission at Hunt's place of business in Fullerton, California, on an indicated date. The company was directed to there testify and produce certain specified books, papers and documents relating to the investigation.[2] On the return day of the subpoena Hunt appeared by its secretary accompanied by an attorney and "upon advice of counsel" advised the Commission representatives that it declined to comply with the subpoena.

Thereafter the Commission, proceeding under section 9 of the Federal Trade Commission Act, 15 U.S.C.A. § 49, filed an application in the district court for enforcement of its subpoena. On that day an order was entered by the court directing Hunt to show cause why the

---

1. As its authority for initiating this investigation the Commission invoked sections 3, 5(a) and 6 of the Federal Trade Commission Act, as amended, 15 U.S.C.A. §§ 43, 45(a) and 46, and section 11 of the Clayton Act, as amended, 15 U.S.C.A. § 21. The precise purpose of the investigation is

"* * * to determine whether Hunt Foods and Industries, Inc., or its predecessors, in connection with the offering for sale, sale and distribution of processed tomato products, by selling such products at unreasonably low prices with the purpose or intent of eliminating competition, have violated Section 5 of the Federal Trade Commission Act, or by selling such products to different customers at discriminatory prices and by affording customers payments or compensations for facilities or services rendered in connection with the sale of such products not afforded competing purchasers on proportionally equal terms, have violated Sections 2(a) and 2(d) of the Clayton Act."

2. Specifications 1(a), (b) and (c) of the subpoena directed that with respect to a three-year period (July 1, 1956, through June 16, 1959) and with respect to Hunt's most populous Hunt and Snider Division sales and broker districts and ten of its largest chain store customers comprising approximately two thirds of Hunt's total sales of food products, the following documents be produced:

"All records and documents (including but not limited to customer purchase orders, contracts of sale, sales, shipping and pre-billing invoices, customer claims, credit memoranda, cancelled checks or vouchers, memorandum billings, cash disbursements journals and cash receipts journals) pertaining to each transaction in which there has been a payment, allowance, credit or the giving of something of value (by way of cooperative advertising, promotional assistance, sales or shipping stimulation, settlement of customer claims or otherwise) to customers or customers of customers in connection with the sale and distribution by the company, its predecessors and subsidiaries of all brands of processed tomato products * * *."

application should not be granted. A return was made thereto and after a hearing and the filing of an "undertaking" by the Commission, to be discussed below, the order under review enforcing the subpoena was entered.

■ Hunt contests the district court order on several grounds. One of these is that the subpoena is invalid because the Commission is without authority to issue an investigational subpoena prior to the issuance of a complaint. No complaint has been issued in this administrative proceeding.

Under section 11 of the Clayton Act, as amended, 15 U.S.C.A. § 21, it is made the duty of the Commission to enforce compliance with various sections of that act including section 2, 15 U.S.C.A. § 13. Compliance is to be obtained by means of a complaint proceeding. The second paragraph of section 11 provides that a complaint is to be filed whenever the Commission "shall have reason to believe" that a person is or has been violating section 2 and other indicated sections.

The Commission cannot have "reason to believe" unless it is in possession of facts warranting such a belief. It thus becomes the duty of the Commission to ascertain the relevant facts. Section 3 of the Federal Trade Commission Act authorizes the Commission to "prosecute any inquiry necessary to its duties." It follows that the Commission is authorized to conduct an investigation to determine whether there is a probability that Hunt has violated sections 2(a) and (d) of the Clayton Act, as amended, 15 U.S.C.A. § 13(a) (d). This is one of the specific purposes of the instant investigation.

Under section 5(a) of the Federal Trade Commission Act, as amended, 15 U.S.C.A. § 45(a), the Commission is empowered and directed to prevent persons, partnerships or corporations (with exceptions not here material) from using unfair methods of competition in commerce and unfair or deceptive acts or practices in commerce. Under section 5(b) the Commission is authorized to institute complaint proceedings, but on-

ly when it "shall have reason to believe" that violations of section 5 have occurred or are occurring.

As in the case of complaint proceedings involving sections 2 and 11 of the Clayton Act, discussed above, it thus becomes the duty of the Commission to ascertain the facts. We noted above that section 3 of the Federal Trade Commission empowers the Commission to prosecute any inquiry necessary to its duties. It follows that the Commission is authorized to conduct an investigation to determine whether Hunt has violated section 5(a) of the Federal Trade Commission Act. This is the second specific purpose of the instant investigation.

Additional investigative power is conferred under section 6(a) of the Federal Trade Commission Act, 15 U.S.C.A. § 46(a). That subsection authorizes the Commission to investigate the organization, business, conduct, practices and management of any corporation engaged in interstate commerce, with exceptions not here material, and its relation to other corporations, individuals, associations and partnerships.

Neither with regard to section 3 investigations nor section 6(a) investigations is a complaint proceeding a prerequisite. As previously indicated, the propriety of conducting an investigation prior to the filing of a complaint is to be implied from the use of the words "shall have reason to believe" in section 11 of the Clayton Act and section 5(b) of the Federal Trade Commission Act.

■ The first paragraph of section 9 of the Federal Trade Commission Act, 15 U.S.C.A. § 49, provides that for the purposes of that act "the commission shall have power to require by subpoena the attendance and testimony of witnesses and the production of all such documentary evidence relating to any matter under investigation." The Commission's subpoena power under section 9 of the Federal Trade Commission Act is not limited to proceedings under that act, but also extends to proceedings under the Clayton Act. Federal Trade Commission v. Tuttle, 2 Cir., 244 F.2d 605,

610; Federal Trade Commission v. Reed, 7 Cir., 243 F.2d 308.

██ Hunt does not question the scope of section 3 of the Federal Trade Commission Act, as analyzed above, in authorizing pre-complaint investigations. It does, however, contend that section 6(a) is ambiguous.

Section 6(a) is said to be ambiguous with respect to the inclusion of investigations of suspected antitrust violations. Such ambiguity, it is contended, arises from the fact that section 6(a) does not make express reference to suspected antitrust violations. It also arises, we are told, because in section 6(a) such words as "investigate," "conduct" and "practices" appear in context with other words which, according to Hunt, connote investigations of a statistical and economic nature or investigations concerning business structures and routine commercial procedures.

We find no such ambiguity. An investigation of a suspected antitrust violation pertains to "the organization, business, conduct, practices, and management" of a corporation, and to "its relation to other corporations and to individuals, associations, and partnerships." Since the scope of the investigations described in section 6(a) is broad enough to include suspected antitrust violations, failure to make specific reference to such violations does not introduce an ambiguity in that regard. Nor does the fact that section 6(a) is also broad enough to authorize investigations of a statistical and economic nature or investigations relating to business structure and routine commercial practices render ambiguous the otherwise clear application of that section to investigations of suspected antitrust violations.

In further support of its contention that section 6(a) does not authorize investigations of suspected antitrust violations, Hunt points to subsections (c), (d) and (e) of the same section. Subsection (c) empowers the Commission to investigate compliance with existing antitrust decrees. Under subsection (d) the Commission is empowered to investigate and report the facts relating to any alleged antitrust violations when the President or either house of Congress so directs. Subsection (e) empowers the Commission upon the application of the Attorney General to investigate and make corrective recommendations for the adjustment of the business of any corporation alleged to be violating the antitrust laws. Hunt argues that under the doctrine of *"expressio unius est exclusio alterius"* this express enumeration in subsections (c), (d) and (e) of instances in which the Commission is empowered to investigate antitrust violations creates a strong inference that Congress did not intend to confer such power in subsection (a).

██ The rule of express mention and implied exclusion may be resorted to as an aid in the construction of a statute where there is no plainer internal evidence of congressional intent. It can never, however, operate to override clear and contrary evidence of congressional intent. Neuberger v. Commissioner, 311 U.S. 83, 88, 61 S.Ct. 97, 85 L.Ed. 58.[3]

In our view clear evidence of contrary congressional intent is to be found in section 6 itself. Subsection (a) of section 6 is general enough to authorize investigations of possible antitrust law violations before or after a complaint has

3. In Securities and Exchange Commission v. C. M. Joiner Leasing Corporation, 320 U.S. 344, 350–51, 64 S.Ct. 120, 123, 88 L.Ed. 88, it was said:

"Some rules of statutory construction come down to us from sources that were hostile toward the legislative process itself and thought it generally wise to restrict the operation of an act to its narrowest permissible compass. However well these rules may serve at times to aid in deciphering legislative intent, they long have been subordinated to the doctrine that courts will construe the details of an act in conformity with its dominating general purpose, will read text in the light of context and will interpret the text so far as the meaning of the words fairly permits so as to carry out in particular cases the generally expressed legislative policy."

been filed. But it does not clearly include the power to investigate the measure of compliance with antitrust decrees. Subsection (c) therefore expressly confers the latter power. Subsection (a) authorizes investigations of possible antitrust violations instituted by the Commission upon its own initiative. Subsections (d) and (e) place the additional duties upon the Commission to conduct investigations upon the direction of the President or houses of Congress, or upon the application of the Attorney General.

It is therefore apparent that the purpose intended to be served by subsections (c), (d) and (e) is not to define or restrict the outer limits of investigative power with regard to the antitrust laws as embraced within subsection (a). Rather it is to extend the Commission's powers in this regard beyond those which are clearly expressed in that subsection.

We conclude that section 6(a) of the Federal Trade Commission Act is not ambiguous in the respects asserted by Hunt.

In arguing that sections 6 and 9 of the Federal Trade Commission Act authorize investigations and the issuance of subpoenas only in connection with complaint proceedings, appellants also contend that the courts have changed their position on this issue since enactment of the Federal Trade Commission Act in 1914. Prior to that enactment, the argument goes, the Supreme Court had held that with certain exceptions the issuance of an administrative subpoena in a pre-complaint proceeding violated the Constitution.[4]

Hence, it is contended, when Congress enacted sections 6 and 9 of that act it did not thereby intend to authorize pre-complaint investigations and the issuance of subpoenas in connection with such investigations. Recognizing that the constitutionality of such administrative procedures has since been upheld,[5] Hunt insists that congressional intent must nevertheless be determined in the light of the law as it stood at the time the statute was enacted.

We do not believe that the Brimson and Harriman cases relied upon by Hunt establish the early constitutional principle contended for. It may be noted that the Supreme Court in deciding the Oklahoma Press Publishing Company case did not find it necessary to overrule these earlier decisions. But in any event whether in 1914 Congress believed that sections 6 and 9 could not under existing court decisions be constitutionally utilized in a pre-complaint proceeding is a matter of conjecture. Moreover, had Congress intended to freeze the application of these sections to correspond to what it may have interpreted to be the then existing concepts of its constitutional powers, it would probably have used language indicative of such a limited meaning. In our view what Congress said in sections 6 and 9 is a more reliable guide to what it intended than any guess as to its understanding of then existing decisional law.

The words of section 9 of the Federal Trade Commission Act, " * * * the commission shall have power to require by subpoena the attendance and testimony of witnesses and the production [of documents] * * * relating to any matter under investigation," were taken from section 12 of the Interstate Commerce Act, as amended, 49 U.S.C.A. § 12. See Federal Trade Commission v. Tuttle, 2 Cir., 244 F.2d 605, 612. Hunt argues that in Harriman v. Interstate Commerce Commission, 211 U.S. 407, 29 S.Ct. 115, 53 L.Ed. 253, decided prior to enactment of the Federal Trade Commission Act, it was held that the subpoena powers conferred by section 12 of the Interstate

4. The two cases relied upon in this connection are Interstate Commerce Commission v. Brimson, 154 U.S. 447, 14 S.Ct. 1125, 38 L.Ed. 1047, decided in 1894, and Harriman v. Interstate Commerce Commission, 211 U.S. 407, 29 S.Ct. 115, 53 L.Ed. 253, decided in 1908. Hunt also refers to Ellis v. Interstate Commerce Commission, 237 U.S. 434, 35 S.Ct. 645, 59 L.Ed. 1036. In our view that case is not in point, but in any event it was decided in 1915, which was after the enactment of the Federal Trade Commission Act.

5. Oklahoma Press Publishing Co. v. Walling, 327 U.S. 186, 214, 66 S.Ct. 494, 90 L.Ed. 614.

Commerce Act are applicable only to adjudicative hearings and not to investigational hearings. Hence, it is argued, we should similarly limit the application of section 9 of the Federal Trade Commission Act.

The principle of statutory construction Hunt thus seeks to have the court apply is that when Congress uses the identical wording of an earlier enactment "the language must be taken to have been adopted with its encrusted meaning." George V. Tribe Co. v. Kendall, U.S. Emer.App., 210 F.2d 658, 662.

But Harriman does not limit the applicability of section 12 of the Interstate Commerce Act in the manner contended by Hunt. The purpose of the investigation involved in Harriman was not limited to a determination of whether the Interstate Commerce Act was being violated in any respect, but was also designed to aid that Commission in recommending additional regulatory legislation. The court held that the subpoena power conferred under section 12 of that act was not broad enough to permit its use in investigations having the latter purpose. Said the court at page 419 of 211 U.S., at page 118 of 29 S.Ct.:

> " * * * the purposes of the act for which the Commission may exact evidence embrace only complaints for violation of the act, and investigations by the Commission upon matters that might have been made the object of complaint."

Giving application to the very principle of statutory construction which Hunt seeks to invoke in citing Harriman, the quoted language warrants the conclusion that Congress intended section 9 to be applicable in aid of investigations which may disclose matters "that might have been made the object of complaint." The instant Federal Trade Commission proceeding is such an investigation.

Hunt cites no other decision in support of its limited construction of sections 6 and 9. While there do not appear to be any appellate decisions precisely in point, such pronouncements as have been made favor the construction for which the Commission argues. In Oklahoma Press Publishing Co. v. Walling, 327 U.S. 186, 66 S.Ct. 494, 90 L.Ed. 614, section 9 of the Fair Labor Standards Act, 29 U.S.C.A. § 209, which incorporates by reference section 9 of the Federal Trade Commission Act, was held to apply to investigations prior to complaint. In Automatic Canteen Company of America v. Federal Trade Commission, 346 U.S. 61, 79, 73 S.Ct. 1017, 1027, 97 L.Ed. 1454, the court, referring to the Federal Trade Commission speaks of the Commission's "broad power of investigation and subpoena prior to the filing of a complaint* * *." [6]

■ The Commission has issued a great many pre-complaint subpoenas in the past forty-five years, and many of them have been judicially upheld.[7] Long administrative practice is entitled to weight in construing statutes. Baltimore & Ohio Ry. Co. v. Jackson, 353 U.S. 325, 330, 77 S.Ct. 842, 1 L.Ed.2d 862.

For the reasons discussed above we hold that the Federal Trade Commission had authority to issue this investigational subpoena prior to the issuance of a complaint.

Another ground on which Hunt attacks the district court order under review is that the service of the subpoena by registered mail rather than by personal service is not authorized by law.

■ It is undisputed that the subpoena was transmitted by registered mail and received by Hunt. Section 5(f) of the Federal Trade Commission Act as amended, 15 U.S.C.A. § 45(f), provides that

---

6. Hunt refers to this language as dictum and cites Nashville Milk Company v. Carnation Company, 7 Cir., 238 F.2d 86, 88 note 1, as authority for disregarding Supreme Court dictum.

7. Recent examples include Federal Trade Commission v. Hallmark, Inc., 7 Cir., 265 F.2d 433; Federal Trade Commission v. Waltham Watch Company, S.D.N.Y., 169 F.Supp. 614; Federal Trade Commission v. Scientific Living, Inc., M.D. Pa., 150 F.Supp. 495.

complaints, orders "and other processes of the Commission under this section" may be served by registered mail. It has been indicated above that the Commission issued and served the subpoena in question during its conduct of an investigation authorized by section 5, one purpose of which is to determine whether there is reason to believe that Hunt has violated that section. The subpoena is therefore a process of the Commission under section 5, hence it may be served by registered mail.

There is no other statute bearing upon the manner of serving subpoenas in such proceedings. Nothing to the contrary appearing in the statute, however, it is reasonable to conclude that Congress did not intend to draw a distinction between sections with reference to the manner of serving subpoenas. Service by registered mail being sufficient for the purposes of investigations under section 5 of the Federal Trade Commission Act, the inference is compelling that it is also sufficient as to investigations under section 6(a) of that act and sections 2(a) and (d) of the Clayton Act.

■ Moreover, section 6(g) of the Federal Trade Commission Act, 15 U.S.C.A. § 46(g), gives the Commission power "to make rules and regulations for the purpose of carrying out the provisions of this act." In our opinion this rule is broad enough to authorize the Commission to provide by rule for the manner of service of process with respect to those activities and duties concerning which there is no statute expressly applicable. The Commission has done so by promulgating a rule which provides for the service of subpoenas in the same manner as set out in section 5(f). 16 C.F.R. §§ 1.35, 3.4.

We conclude that service of the subpoena in question by registered mail is authorized and valid.

The principal contention advanced by Hunt on this appeal has to do with the scope and breadth of the subpoena which the Commission served upon Hunt. Arguing in the district court that the subpoena is unreasonable and oppressive, Hunt presented the affidavit of Gilbert Karste, staff assistant to Hunt's treasurer, describing the work entailed in providing the specified documents. In this affidavit, which was not controverted, it was estimated that no less than 230,000 transactions would have to be exhaustively examined in order to ascertain what documents were to be supplied. Based on time studies, Karste estimated that the aggregate time which Hunt personnel would have to expend would be 157,789 hours, or 19,724 man days. This would involve a four-year task for twenty employees.

The district judge requested the Commission's counsel to comment upon the asserted burdensome and oppressive scope of the subpoena. The response to this request indicated that the Commission did not contemplate placing such a burden upon Hunt, and it was represented that the actual work would be minimized by the use of sampling methods. The district court thereupon gave the Commission fifteen days in which to file a memorandum outlining the Commission's views concerning the work and time required to comply with the subpoena.

Such a memorandum was thereafter filed in the form of an "undertaking" as to the manner in which the Commission would accept return on the subpoena. The relevant part of this undertaking is quoted in the margin.[8] The district court

---

8. " * * * In compliance with that suggestion and by leave of the Court, the Commission makes the following undertaking:

"1. The Commission representatives receiving return will do so during ordinary business hours at the place or places where the files containing the various specified documents are located.

"2. No more than three Commission representatives will be employed at any one time for this purpose. It is understood that respondent will provide desk space for these Commission representatives.

"3. It is not contemplated that it shall be necessary for employees of respondent to perform the physical work of with-

then filed an opinion which among other things discusses the scope of the subpoena. The district court therein summarized the undertaking filed by the Commission and the latter's expressed willingness to accept the undertaking as a binding limitation.

The view is expressed in the opinion of the district court that in filing the undertaking the Commission gave assurance that it would observe the protective restraints which might be imposed by courts in the conduct of administrative investigations. Because of what it regarded as the restraint and limitation evidenced by the undertaking, the district court stated that it was unnecessary to decide whether that document constituted an actual modification of the subpoena.

It is stated in the district court opinion, however, that the court would retain jurisdiction and would be available to determine any dispute as to any order of compliance to be issued. It is further recited in the opinion that "Hunt *will be protected* against any oppressive or illegal use of the subpoena power, should any be attempted." The court concluded that the scope of the subpoena "is not too broad or burdensome." Federal Trade Commission v. Hunt Foods and Industries, Inc., 178 F.Supp. 448, 452–53, 456.

In findings of fact thereafter entered the court among other things summarized the recitals of the Commission's undertaking. In its conclusions of law the court recited that the testimony and documents required by the subpoena are relevant to the Commission's investigation and that "the demands of the subpoena are not too broad or burdensome." In the order entered on the same day, which is here under review, Hunt was directed "to testify and produce books, papers and documents in accordance with the Commission's subpoena. * * * "

■ On this branch of the case Hunt argues that the district court order is invalid by reason of vagueness and ambiguity. This vagueness and ambiguity, it is contended, arises from the fact that it is not possible to ascertain from that order whether (a) Hunt is obligated to produce all of the documents called for by the subpoena; or (b) whether Hunt is required to grant Commission investigators access to Hunt's files; or (c) whether Hunt has the choice of following one or the other of these courses.

In the district court's conclusions of law it is recited that the demands of the subpoena are not too broad or burdensome. This conclusion, however, is to be read in the light of the court's opinion, in which the Commission's undertaking was in effect stated to be a binding restraint and limitation upon the Commission. In substance, then, the district court has con-

---

drawing the specified documents from the various files, unless respondent so elects. Commission representatives will stand ready to do this provided that respondent makes available an employee to indicate the files which contain the various specified documents.

"4. Commission representatives will not examine all of the various documents covered by specification 1, but will conduct their examination of these documents by a sampling method. Sample documents to be examined will be selected by Commission representatives, without restriction, from among the entire group of documents specified.

"5. Commission representatives will also examine the documents covered by specifications 3 and 4, or, at their option, samples of those documents.

"6. Where Commission representatives wish to retain copies of documents, they will, at the option of respondent, either accept photographic copies prepared by respondent or remove such documents temporarily to have them copied at the Commission's expense.

"7. Commission representatives will allow respondent to make and retain copies of studies, schedules, analyses or notes prepared by such representatives in the course of receiving return.

"8. Provided that Commission representatives receive the necessary assistance from respondent in locating files containing the specified documents, Commission representatives will be present for no more than 760 man-hours at respondent's place or places of business for the purpose of examining the documents involved.

"9. Respondent's representatives will be free to observe Commission representatives throughout the making of the return on the subpoena."

cluded that the subpoena, subject to such restraint and limitation, is not too broad or burdensome. The order of compliance is not made expressly subject to such restraint and limitation. In our opinion, however, it is subject thereto by necessary implication. Otherwise the order would provide relief not warranted by the conclusions of law as construed above.

We therefore hold that the order in question is not vague and ambiguous with respect to the production of documents called for by the subpoena. Hunt is not obligated thereunder to produce all of the documents called for in that subpoena, but only such documents of the kind referred to therein which may be called for by the Commission within the ambit of the binding undertaking which it has filed.

■ With regard to the matter of access to Hunt's files the order itself is silent. It provides only that Hunt must testify and produce books, papers and documents in accordance with the subpoena. The subpoena makes no reference to access. It has been held above, however, that the order is to be construed in the light of the conclusions of law. The conclusions of law, as we interpret them, recite that the demands of the subpoena are not too broad or burdensome if compliance is restrained and limited as provided in the undertaking. Thus, if the undertaking were to be interpreted as providing that, as an alternative to producing all books, papers and documents described in the subpoena, Hunt must grant the Commission access to Hunt's files, then the order would have to be construed as granting such access.

In contending that the undertaking contains such a provision Hunt points to paragraphs 1, 3 and 4 thereof. See footnote 8. Hunt also refers to certain statements made by counsel for the Commission during argument in the district court.[9]

Paragraph 1 of the undertaking provides only that the subpoena is returnable at the place where the records are kept. This is not unusual procedure.[10] Paragraph 3 only manifests the Commission's willingness to physically withdraw documents from the company's files, if the latter so elects. Paragraph 4 provides only that the Commission will use sampling methods and that it will for this purpose designate the documents it desires Hunt to produce for examination. We do not believe that the statements of counsel made during oral argument were intended to claim a right of access as distinguished from a willingness to go to the files if Hunt consents.

We conclude that the order under review is not vague and ambiguous with respect to the right of access, and hold that such order, as the Commission concedes, grants no power of access to Hunt's files.

■ We do not believe that the subpoena, as limited by the undertaking and absent any right of access, is invalid because of its scope. It is unnecessary for us to determine whether the subpoena, unaffected by the filed undertaking, would be unreasonably broad and burdensome. Nor need we decide the further question raised by Hunt as to whether the proper procedure has been followed in seeking an order granting access to Hunt's files, since the order does not grant access.

9. During this argument counsel said:
"Of course, in connection with this investigation we must feel free to go to all of these papers—we must be free to go to all of these papers relating to any transaction.
" * * * If the place where specific records are kept is indicated to Mr. Elliott [F.T.C. investigator], he and his assistants will go in and select as many of those records as they need * * *.

"The proposal * * * is that all of the documents will be physically available and will be selected by our examiner."

10. See Westside Ford, Inc. v. United States, 9 Cir., 206 F.2d 627, 630; Walling v. American Rolbal Corporation, 2 Cir., 135 F.2d 1003, 1005.

The order is affirmed, it being understood that the district court retains jurisdiction to determine any dispute as to the meaning of that order or the manner of compliance therewith not settled by this opinion.