Arthur J. GOLDBERG, Secretary of Labor, U. S. Dept. of Labor, Petitioner-Appellant

v.

TRUCK DRIVERS LOCAL UNION NO. 299, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, and General Drivers, Warehousemen, Helpers and Gas Station Attendants Local Union No. 614, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, Respondents-Appellees.

No. 14533.

United States Court of Appeals
Sixth Circuit.
Aug. 16, 1961.

808

Alan S. Rosenthal, Department of Justice, Washington, D. C., William H. Orrick, Jr., Asst. Atty. Gen., Lawrence W. Gubow, U. S. Atty., Detroit, Mich., and W. Harold Bigham, Attys., Department of Justice, Washington, D. C., and Charles Donahue, Sol., Bessie Margolin and James R. Beaird, Asst. Sols., Louis Weiner, Deputy Asst. Sol., Department of Labor, Washington, D. C., on brief, for petitioner-appellant.

Hugh Hafer, Milwaukee, Wis., David Previant, Milwaukee, Wis., and George S. Fitzgerald and Paul B. Mayrand, Detroit, Mich., on brief, for respondent-appellees.

Before CECIL, WEICK and O'SULLIVAN, Circuit Judges.

WEICK, Circuit Judge.

This case involves important questions concerning the right of the Secretary of Labor to secure judicial enforcement of subpoenas duces tecum issued by him and served on union officers in connection with an investigation he was attempting to make under the authority of Section 601 of the Labor-Management Reporting and Disclosure Act of 1959, 29 U.S.C.A. § 521.

The union officers appeared in response to the subpoenas, challenged the right of the Secretary to make the investigation and refused to produce the records called for in view of legal questions which the unions and their counsel believed were involved including the constitutionality of certain sections of the Act providing for the issuance of the subpoenas. The union officers had custody of the records subpoenaed and there was no claim of any physical inability on their part to produce them.

The Secretary filed a petition in the District Court for enforcement of the subpoenas, which was denied on the ground that the Secretary had made no showing as to necessity for the investigation and because the subpoenas were too broad.

It appeared on the face of the subpoenas that they were issued in connection with "an investigation by the Bureau of Labor-Management Reports [1] involving a determination whether any person has violated any provision of the Act." The subpoenas called for the production of the following records:

All records for the period from January 1, 1959 to the present date maintained by you or under your control which contain any basic information or data on matters required to be reported from which the organizational report (Form LM–1), and the financial report (Form LM–2) filed with the Secretary of Labor for Local 614, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America may be verified, explained or clarified and checked for accuracy and completeness, in connection with all items referred to or listed in such report and all items

1. The Bureau was the duly authorized representative of the Secretary.

omitted or excluded therefrom which are relevant thereto and are required to be included in said reports, such records to include but not be limited to, vouchers, worksheets, ledgers, audit reports, records of receipt of dues, fees, assessments, fines and work permits, accounts receivable, accounts payable, journals, journal vouchers, check register, payroll register and related records and all books of accounts of Local 614, related to the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, or other local unions affiliated with said International including all bank statements, cancelled checks, check stubs, audit reports, financial reports, records of loans, records of mortgages, records of ownership of property real and personal, deeds, records of trusts, records of investments, and all correspondence and memoranda pertaining to receipts and disbursements.[2]

No evidence was offered in the District Court. The record consisted of the petition for enforcement, the exhibits attached thereto and the unions' response which admitted the allegations of Paragraphs I to XI of said petition.

In the District Court, the unions contended that it was obligatory on the part of the Secretary to first establish probable cause for the investigation as a condition precedent to obtaining enforcement of the subpoenas by the court.

The District Court, in its opinion denying enforcement, did not expressly use the term "probable cause," but adopted words of like import which imposed a requirement at least as stringent, namely, that the Secretary establish a basis for the investigation. The court said that there must be some "reasonable foundation or valid purpose" rather than merely looking into the records of the union in the hope of turning up something. This, in effect, was a holding that the Secretary had no right merely to investigate, but was required first to establish a probable violation of the Act.

In this Court, the unions contended that as a prerequisite to judicial enforcement of a subpoena duces tecum the Secretary "must show that he has a reasonable belief of necessity [i. e., a reasonable basis] for the investigation."

The statute required the unions to maintain the records which were subpoenaed. It provided:

"Every person required to file any report under this subchapter shall maintain records on the matters required to be reported which will provide in sufficient detail the necessary basic information and data from which the documents filed with the Secretary may be verified, explained or clarified, and checked for accuracy and completeness, and shall include vouchers, worksheets, receipts, and applicable resolutions, and shall keep such records available for examination for a period of not less than five years after the filing of the documents based on the information which they contain." 29 U.S.C.A. § 436.

Power was granted to the Secretary to make an investigation by the following language:

"Investigations by Secretary; applicability of other laws

"(a) The Secretary shall have power when he believes it necessary in order to determine whether any person has violated or is about to violate any provision of this chapter (except subchapter II of this chapter) to make an investigation and in connection therewith he may enter such places and inspect such records and accounts and question such persons as he may deem necessary to enable him to determine the facts relative thereto. The Secretary may report to interested persons or officials concerning the facts required to be shown in any report required by this chapter and concerning the reasons for failure or refusal to file

2. The subpoena for Local 610 was identical except for the name of the union and the date of appearance.

such a report or any other matter which he deems to be appropriate as a result of such an investigation.

"(b) For the purpose of any investigation provided for in this chapter, the provisions of sections 49 and 50 of Title 15 (relating to the attendance of witnesses and the production of books, papers, and documents), are made applicable to the jurisdiction, powers, and duties of the Secretary or any officers designated by him." 29 U.S.C.A. § 521(a, b).

The pertinent provisions of Section 9 and Section 10 of the Federal Trade Commission Act which were made applicable are set forth in footnote 3.

3. Section 9 of the Federal Trade Commission Act (15 U.S.C.A. § 49) provides in pertinent part as follows:

"Documentary evidence; depositions; witnesses

"For the purposes of sections 41–46 and 47–58 of this title the commission, or its duly authorized agent or agents, shall at all reasonable times have access to, for the purpose of examination, and the right to copy any documentary evidence of any corporation being investigated or proceeded against; and the commission shall have power to require by subpoena the attendance and testimony of witnesses and the production of all such documentary evidence relating to any matter under investigation. Any member of the commission may sign subpoenas, and members and examiners of the commission may administer oaths and affirmations, examine witnesses, and receive evidence.

"Such attendance of witnesses, and the production of such documentary evidence, may be required from any place in the United States, at any designated place of hearing. And in case of disobedience to a subpoena the commission may invoke the aid of any court of the United States in requiring the attendance and testimony of witnesses and the production of documentary evidence.

"Any of the district courts of the United States within the jurisdiction of which such inquiry is carried on may, in case of contumacy or refusal to obey a subpoena issued to any corporation or other person, issue an order requiring such corporation or other person to appear before the commission, or to produce documentary evidence if so ordered, or to give evidence touching the matter in question; and any failure to obey such order of the court may be punished by such court as a contempt thereof.

\* \* \* \* \*

"No person shall be excused from attending and testifying or from producing documentary evidence before the commission or in obedience to the subpoena of the commission on the ground or for the reason that the testimony or evidence, documentary or otherwise, required of him may tend to criminate him or subject him to a penalty or forfeiture. But no natural person shall be prosecuted or subjected to any penalty or forfeiture for or on account of any transaction, matter, \* \* \* or produce evidence, documentary or otherwise, before the commission in obedience to a subpoena issued by it: PROVIDED, That no natural person so testifying shall be exempt from prosecution and punishment for perjury committed in so testifying."

Section 10 of the Federal Trade Commission Act (15 U.S.C.A. § 50) provides in pertinent part as follows:

"Offenses and penalties

"Any person who shall neglect or refuse to attend and testify, or to answer any lawful inquiry or to produce documentary evidence, if in his power to do so, in obedience to the subpoena or lawful requirement of the commission, shall be guilty of an offense and upon conviction thereof by a court of competent jurisdiction shall be punished by a fine of not less than $1,000 nor more than $5,000, or by imprisonment for not more than one year, or by both such fine and imprisonment.

"Any person who shall willfully make, or cause to be made any false entry or statement of fact in any report required to be made under sections 41–46 and 47–58 of this title, or who shall willfully make, or cause to be made, any false entry in any account, record, or memorandum kept by any corporation subject to said sections, or who shall willfully neglect or fail to make, or to cause to be made, full, true, and correct entries in such accounts, records, or memoranda of all facts and transactions appertaining to the business of such corporation, or who shall willfully remove out of the jurisdiction of the United States, or willfully mutilate, alter, or by any other means falsify any documentary evidence of such corporation, or who shall willfully refuse to submit to the commission or to any of its authorized agents, for the purpose of inspection and taking copies, any documentary evidence of such corporation in his possession or within his control, shall

The legislative history of the Labor-Management Reporting and Disclosure Act reveals that the original bills introduced in the House [4] and Senate [5] each granted power to the Secretary to make an investigation only when he had probable cause to believe that any person or labor organization had violated any provision of the Act. The probable cause requirement, however, was eliminated from the Act as it was finally passed. The reason for deleting the probable cause requirement is set forth in the minority amendments adopted by the Senate Committee on Labor and Public Welfare. It is as follows:

"Section 106(c): The Secretary shall have the power and is directed when he believes it necessary in order to determine whether anyone has violated or is about to violate a provision of this bill to make investigations.

"As originally worded, this section would have given the Secretary the authority to investigate the books and records of persons reporting under the act only when he had probable cause to believe that a person had violated provisions of the act. On the surface, the term 'probable cause' would appear to give the Secretary all the investigatory power that he needed. But the words 'probable cause' would throw a monkey wrench into the Secretary's investigatory machinery. Probable cause means more than mere suspicion that the act has been violated. To have probable cause, a person must have such evidence as would lead the ordinary prudent man to believe that the act has been violated. Consequently, every time he commenced an investigation the Secretary could be dragged into court until the question of probable cause had been decided. Under nearly every statute requiring the filing of reports, such as the Internal Revenue Act and the Fair Labor Standards Act, the Administrator can conduct 'spot check' investigations unhampered by the 'probable cause' requirement. Our amendment rewrites this section to give the Secretary investigatory power when he believes it necessary in order to determine whether a violation has occurred or is about to occur." U. S. Code Congressional & Administrative News—86th Congress, 1st Session 1959, pp. 2395, 2396.

After the bill had passed the Senate, it was sent to a Conference Committee which reported:

"Section 601—Investigations

"The Senate bill contains a provision which directs the Secretary to conduct an investigation when he believes it necessary in order to determine whether any person has, or is about to, violate the act, or any rule or regulation authorized by the act.

"The House amendment directs the Secretary to make an investigation when he has probable cause to believe that any person has violated a provision of the act, other than title I.

"The conference substitute is similar to the Senate bill, except that the investigation authority is per-

---

be deemed guilty of an offense against the United States, and shall be subject, upon conviction in any court of the United States of competent jurisdiction, to a fine of not less than $1,000 nor more than $5,000, or to imprisonment for a term of not more than three years, or to both such fine and imprisonment." 29 U.S.C.A. § 521(a, b).

4. Section 601(a) of H.R. 8400, 86th Cong., 1st Session, known as Landrum-Griffin

bill. The number of the bill which finally was passed by the House was H.R. 8342 in which the text of H.R. 8400 had been substituted.

5. Section 106(c) of S. 505, 86th Cong., 1st Session, known as the Kennedy-Ervin bill. S. 1555 which incorporated a number of committee amendments to S. 505 was introduced by Senator Kennedy and referred to the Committee on Labor and Public Welfare.

missive rather than mandatory, no investigation may be made with respect to violations of rules and regulations, and the investigation authority does not extend to title I.

"The Senate bill also contains a provision authorizing the Secretary to report to interested persons concerning the facts required to be shown in reports and concerning the reasons for failure or refusal to file a report or any other matter he deems appropriate as a result of an investigation. The conference substitute adopts this provision." U. S. Code Congressional & Administrative News—86th Congress, 1st Session 1959, p. 2508.

The legislative history of the Act is clear that Congress rejected the "probable cause" requirement because it might hamper the Secretary in the performance of his duties with respect to investigation which were imposed upon him by the Act. With such a requirement, each investigation would likely be met by a lawsuit in which the Secretary would be obliged to prove a probable violation of the Act or enforcement of subpoenas would be denied. Even if successful in his proof, the investigation by the Secretary might be delayed for months or years while the matter was being litigated in the courts. It seems to us that the court ought not to impose a condition, which Congress rejected, on the exercise of the right of the Secretary to investigate. Nor do we see any real difference between the rejected "probable cause" requirement and that of a "reasonable basis" for the investigation adopted by the District Court. While the disclosure sought must not be unreasonable or oppressive (Oklahoma Press Publishing Co. v. Walling, 327 U.S. 186, 208, 66 S.Ct. 494, 90 L.Ed. 614), this does not mean that the Secretary is obligated to establish a reasonable basis for his investigation. If the Secretary was in possession of facts establishing a probable violation he might never need to investigate. The purpose of the investigation authorized by Congress was to provide the means of discovery whereby the Secretary could determine whether the Act was being violated, or about to be violated.

All the statute required, in order for the Secretary to investigate, was that he "believe it necessary in order to determine whether any person has violated or is about to violate any provision of this chapter."

In his petition for enforcement filed in the District Court, the Secretary alleged in paragraph six that he believed it was necessary to make the investigation to determine whether any persons violated or were about to violate the law. The unions in their response to the petition (Par. I) admitted the allegations contained in paragraph six and certain other paragraphs of the petition.

█ In the absence of proof to the contrary, there is a presumption of regularity in the proceedings of a public officer. The burden is upon the party complaining to show otherwise. Cf. Fahey v. Mallonee, 332 U.S. 245, 254, 67 S.Ct. 1552, 91 L.Ed. 2030; Mississippi Road Supply Co. v. Walling, 5 Cir., 136 F.2d 391, 394; 42 Am.Jur. § 240 p. 680. The trial judge commented on the fact that the Secretary did not offer any evidence to establish the reason or basis for the investigation. In our opinion, the Secretary was not required to do so. The statute was sufficient authority for him to proceed. The purpose of the investigation appeared on the face of the subpoenas. The Secretary could not very well perform his statutory duty and determine whether the Act was being violated or about to be violated without making an investigation. Requiring the Secretary to first establish a probable violation of the Act, as a condition precedent to making an investigation, effectively stripped him of his power to investigate and prevented him from determining whether the Act was being violated or about to be violated. It virtually rendered the enforcement provisions of the Act nugatory.

We believe Oklahoma Press Publishing Co. v. Walling, 327 U.S. 186, 66 S.Ct. 494,

509, 90 L.Ed. 614, is dispositive of this issue. In upholding enforcement of a subpoena duces tecum issued by the Administrator of the Wage and Hour Division of the Department of Labor, the Court said:

"Congress has made no requirement in terms of any showing of 'probable cause'; and, in view of what has already been said, any possible constitutional requirement of that sort was satisfied by the Administrator's showing in this case, including not only the allegations concerning coverage, but also that he was proceeding with his investigation in accordance with the mandate of Congress and that the records sought were relevant to that purpose. * * *

"The result therefore sustains the Administrator's position that his investigative function, in searching out violations with a view to securing enforcement of the Act, is essentially the same as the grand jury's, or the court's in issuing other pretrial orders for the discovery of evidence, and is governed by the same limitations. These are that he shall not act arbitrarily or in excess of his statutory authority, but this does not mean that his inquiry must be 'limited * * * by * * * forecasts of the probable result of the investigation * * *.' Blair v. United States, 250 U.S. 273, 282, 39 S.Ct. 468, 63 L.Ed. 979; cf. Hale v. Henkel, 201 U.S. 43, 26 S.Ct. 370, 50 L.Ed. 652. Nor is the judicial function either abused or abased, as has been suggested, by leaving to it the determination of the important questions which the Administrator's position concedes the courts may decide."

The Court was cognizant of contentions which would block an investigation at the very threshold of the inquiry stating:

"On the other hand, petitioners' view, if accepted, would stop much if not all of investigation in the public interest at the threshold of inquiry and, in the case of the Administrator, is designed avowedly to do so. This would render substantially impossible his effective discharge of the duties of investigation and enforcement which Congress has placed upon him. And if his functions could be thus blocked, so might many others of equal importance."

In United States v. Morton Salt Co., 338 U.S. 632, 70 S.Ct. 357, 369, 94 L.Ed. 401, the Court followed Oklahoma Press and said with respect to the grounds for an investigation:

"Even if one were to regard the request for information in this case as caused by nothing more than official curiosity, nevertheless law-enforcing agencies have a legitimate right to satisfy themselves that corporate behavior is consistent with the law and the public interest."

See also Federal Trade Commission v. Crafts, 355 U.S. 9, 78 S.Ct. 33, 2 L.Ed.2d 23; Endicott Johnson Corp. v. Perkins, 317 U.S. 501, 63 S.Ct. 339, 87 L.Ed. 424; Hunt Food & Industries, Inc. v. Federal Trade Commission, 9 Cir., 286 F.2d 803, certiorari denied 365 U.S. 877, 81 S.Ct. 1027, 6 L.Ed.2d 190; Provenzano v. Porter, 9 Cir., 159 F.2d 47, certiorari denied 331 U.S. 816, 67 S.Ct. 1303, 91 L.Ed. 1834; Walling v. La Belle S. S. Co., 6 Cir., 148 F.2d 198; Fleming v. Montgomery Ward & Co., 7 Cir., 114 F.2d 384.

In Chapman v. Maren Elwood College, 9 Cir., 225 F.2d 230, relied on by appellees, the court denied enforcement of a subpoena duces tecum issued by the Veterans Administration on the ground that it had been issued for an improper purpose and, was therefore unreasonable. The purpose of the investigation in that case was to compel the college to agree to a ten percent projection demand. Affidavits proving this contention were offered in evidence by the college and were not rebutted by the Veterans Administration. No proof was offered by the unions in the present case that the subpoenas were issued for any improper purpose.

The District Court relied on Federal Trade Commission v. American Tobacco Co., 264 U.S. 298, 44 S.Ct. 336, 68 L.Ed. 696, but as we pointed out in Walling v. La Belle S. S. Co., 6 Cir., 148 F.2d 198, the Federal Trade Commission did not possess power of inspection such as was granted by Congress to the Wage and Hour Administrator under Section 11(a) of the Fair Labor Standards Act, 29 U.S. C.A. § 211(a). The Secretary here has the same power as the Administrator. The later decisions of the Supreme Court in Oklahoma Press, Morton Salt and Crafts clearly indicate that probable cause for an investigation is not required. In our judgment, the District Court erred in imposing a condition on the exercise of the right granted by Congress to the Secretary to make an investigation.

It is next contended that the subpoenas duces tecum were too broad. In substance, they required production of records containing basic information or data on matters required to be reported from which the organizational reports (Form LM–1) and the financial reports (Form LM–2) filed with the Secretary by the unions may be verified, explained or clarified and checked for accuracy and completeness. These were the records which the statute required the unions to keep and were quasi-public records. Production of the records could not be resisted on the ground of self-incrimination. Shapiro v. United States, 335 U.S. 1, 68 S.Ct. 1375, 92 L.Ed. 1787; Wilson v. United States, 221 U.S. 361, 31 S.Ct. 538, 55 L.Ed. 771; United States v. Pulford, 6 Cir., 155 F.2d 944; Rodgers v. United States, 6 Cir., 138 F.2d 992. The unions asserted no such ground. In our opinion, it was not unreasonable to compel production of records which the law required to be kept and from which the reports filed with the Secretary were made. In no other way could the Secretary verify the reports than by examination of the records. These records were relevant to the inquiry because they would throw light on whether the reports filed by the unions

with the Secretary spoke the truth. The District Court, however, had the power to impose protective restraints on the conduct of the investigation to relieve against oppression or other illegal conduct. Hunt Foods & Industries, Inc. v. Federal Trade Commission, 9 Cir., 286 F.2d 803, 811, certiorari denied 365 U.S. 877, 81 S.Ct. 1027, 6 L.Ed.2d 190. This power was not invoked by the unions. They questioned the right of the Secretary to make the investigation.

Oklahoma Press involved a corporation. It is urged that a different rule should apply to labor unions. We think not. In United States v. White, 322 U.S. 694, 64 S.Ct. 1248, 1252, 88 L.Ed. 1542, a subpoena duces tecum issued by the District Court requiring a union to produce its records before a Grand Jury was resisted by a union officer on the ground that they might tend to incriminate the union or himself individually or as such officer. The Supreme Court held that this defense was not available. While White involved the Fifth Amendment, the opinion of the Court contains language which is pertinent here. The Court said:

"The fact that the state charters corporations and has visitorial powers over them provides a convenient vehicle for justification of governmental investigation of corporate books and records. Hale v. Henkel, supra; Wilson v. United States, supra. But the absence of that fact as to a particular type of organization does not lessen the public necessity for making reasonable regulations of its activities effective, nor does it confer upon such an organization the purely personal privilege against self-incrimination. Basically, the power to compel the production of the records of any organization, whether it be incorporated or not, arises out of the inherent and necessary power of the federal and state governments to enforce their laws, with the privilege against self-incrimination being limited to its historic function of protecting only

the natural individual from compulsory incrimination through his own testimony or personal records."

The Court concluded:

"The union and its officers acting in their official capacity lack the privilege at all times of insulating the union's books and records against reasonable demands of governmental authorities."

■ Finally, the unions contend that Section 201 of the Act (29 U.S.C.A. § 431), containing the provisions requiring them to file reports with the Secretary, is unconstitutional in violation of the Commerce Clause, Article I, Section 8. This contention was not passed upon by the District Court. The unions claim that the Secretary's authority to investigate is dependent upon Section 201 of the Act, and, therefore, such Section is subject to challenge in this case.

The unions concede (Brief p. 19) that Congress has the power to regulate collective bargaining activities affecting interstate commerce. N. L. R. B. v. Jones & Laughlin Steel Corp., 301 U.S. 1, 57 S.Ct. 615, 81 L.Ed. 893. They admit (Brief p. 22) that the Section would be constitutionally supportable if the reporting requirements were limited to the filing of collective bargaining agreements, reporting strike vote procedures, hiring hall practices and the like. They insist, however, that the Section contains general reporting provisions and is an attempt by Congress, using its conceded power, to legislate with respect to all of the internal affairs of the unions, which are purely local in character. They argue that if this legislation is sustained it will obliterate any meaningful distinction between federal and state authority.

The trouble with this contention is that the collective bargaining procedures and the like, which admittedly may be regulated, are not the only union activities which substantially affect interstate commerce.

Congress has made detailed findings, based on extensive investigations, which were adopted as part of the Act (29 U. S.C.A. § 401). These findings, in substance, were "that the relations between employers and labor organizations and the millions of workers they represent have a substantial impact on the commerce of the Nation"; that the Federal Government has a responsibility to protect the rights of the employees; that in order to accomplish the free flow of commerce, it is necessary that labor organizations, employers and their officials maintain the highest standards of responsibility and ethical conduct in the handling of their affairs particularly as they affect labor-management relations. Congress found from its recent investigations that these high standards had not been maintained but were breached and disregarded; that it was necessary to pass the Act to eliminate or prevent improper practices which defeated the policy of the Labor-Management Relations Act of 1947, as amended, and burdened and obstructed commerce.

These findings of Congress are binding on the courts. As recently stated by the Supreme Court in Communist Party of United States of America v. Subversive Activities Control Board, 367 U.S. 1, 81 S.Ct. 1357, 1409, 6 L.Ed.2d 625:

"It is not for the courts to re-examine the validity of these legislative findings and reject them. See Harisiades v. Shaughnessy, 342 U.S. 580, 590, 72 S.Ct. 512, 96 L.Ed. 586. They are the product of extensive investigation by Committees of Congress over more than a decade and a half. Cf. Nebbia v. People of State of New York, 291 U.S. 502, 516, 530, 54 S.Ct. 505, 507, 513, 78 L.Ed. 940. We certainly cannot dismiss them as unfounded or irrational imaginings. See Galvan v. Press, 347 U.S. 522, 529, 74 S.Ct. 737, 741, 98 L.Ed. 911; American Communications Ass'n, C. I. O. v. Douds, 339 U.S. 382, 388–389, 70 S.Ct. 674, 678–679, 94 L.Ed. 925, * * *"

Where, as here, the activities have a substantial effect on interstate commerce, it is not an objection that they are local in character. United States v.

Darby, 312 U.S. 100, 61 S.Ct. 451, 85 L.Ed. 609; Wickard v. Filburn, 317 U.S. 111, 63 S.Ct. 82, 87 L.Ed. 122.

■ The Commerce Clause does not inhibit Congress in selecting the means deemed necessary for bringing out the desired conditions in the channels of interstate commerce. American Power & Light Co. v. S. E. C., 329 U.S. 90, 100, 67 S.Ct. 133, 91 L.Ed. 103.

In our opinion, Section 201 of the Act does not offend against the Commerce Clause.

The judgment of the District Court is reversed and the cause remanded with instructions to grant the petition for enforcement of the subpeonas.