Orville L. FREEMAN, Secretary of Agriculture of the United States, Petitioner,

v.

CANNED DAIRY PRODUCTS, INC., Respondent.

Misc. No. 3893.

United States District Court W. D. Pennsylvania.

June 23, 1966.

Thomas Daley, Asst. U. S. Atty., Pittsburgh, Pa., for the United States.

Robert G. MacAlister, Alfred D. Brandon, Pittsburgh, Pa., for defendant.

## OPINION

ROSENBERG, District Judge.

This matter is here on an application by the petitioner, Orville L. Freeman, Secretary of Agriculture, for an order requiring the respondent, Canned Dairy Products, Inc., to testify and produce documentary evidence as required by a subpoena duces tecum issued on October 6, 1965 and served upon the respondent. The subpoena duces tecum was issued and served under the provisions of the Agricultural Marketing Agreement Act of 1937, as amended, 7 U.S.C. § 601 et seq.*

The Department of Agriculture is conducting an investigation under the provisions of the Marketing Agreement Act to determine whether various handlers subject to regulation under the Delaware Valley or New York-New Jersey marketing orders have violated or are violating directly or indirectly, alone or in concert with others, any of the terms or provisions of the marketing orders by means of unlawful rebates, refunds, kickbacks, or other unlawful actions resulting in non-payment to producers and cooperative associations of producers of the minimum prices required to be paid for milk pursuant to the orders.

The Department of Agriculture alleges that its investigations have revealed that the minimum pricing provisions of the Delaware order may be being violated by a scheme whereby, on paper, the marketing orders are complied with; that the scheme involves the sale of milk by the Coshocton Co-Operative Association in Ohio to handlers regulated under the

* This determination here follows a hearing scheduled after the parties had filed their respective pleadings. The parties agreed to the necessary facts for which this determination is sought, but disputed the legal significance of the subpoena upon which the action rests.

Delaware order through certain unregulated handlers, including the respondent; and that for milk which passes to regulated handlers, the payments are made in accordance with the minimum pricing provisions. However, the Department has reason to believe that for milk which is not subject to the minimum pricing provisions the producers, and the co-operative associations of producers, are paid an inordinately low price, and that the savings effected are passed on to regulated handlers, which constitutes a rebate and a violation of the marketing order.

■ In the conduct of its investigations, the Secretary of Agriculture is empowered "to require by subpoena the attendance and testimony of witnesses and the production" of documentary evidence "relating to any matter under investigation." (7 U.S.C. § 610(h), incorporating 15 U.S.C. § 49) [1] This power has been validly delegated to and may be exercised by the Director of the Dairy Division, Consumer and Marketing Service, United States Department of Agriculture, who issued the subpoena involved here. Freeman v. Fidelity-Philadelphia Trust Co., 248 F.Supp. 487 (E.D.Pa., 1965).

■ The respondent Canned Dairy, a milk broker, is not a regulated "handler" of milk under the Act. However, it is now established that the subpoena power extends to and may be exercised over third parties who are not being investigated or proceeded against. In the *Fidelity-Philadelphia* case, supra, it was held that if the subpoena was otherwise valid, the respondent was not exempt from compliance because it was a bank and not a milk handler subject to regulation under the Milk Marketing Act. In Freeman v. Brown Bros. Harriman & Co., 357 F.2d 741, C.A.2, 1966, it was held that the Secretary had authority to subpoena the accounts of a milk broker who was not subject to the provisions of the marketing Act.

At the hearing on this matter, the respondent raised preliminary questions of lack of jurisdiction and improper venue. These contentions were abandoned by the respondent, but two questions remain for our consideration.

First, the respondent contends that the subpoena has been complied with. The parties agree that the respondent has furnished the records called for in Paragraph 2 of the subpoena:

"[financial records] which relate directly or indirectly to volumes of milk handled, brokered or sold for each

---

[1]. Section 10(h) of the Agricultural Marketing Agreement Act of 1937, as amended, 7 U.S.C. § 610(h), provides:

"(h) For the efficient administration of the provisions of this chapter, the provisions, including penalties, of sections 48, 49 and 50 of Title 15 are made applicable to the jurisdiction, powers and duties of the Secretary in administering the provisions of this chapter, and to any person subject to the provisions of this chapter, whether or not a corporation * * *.

Section 9 of the Federal Trade Commission Act, 15 U.S.C. § 49, provides in pertinent part:

* * * the commission, or its duly authorized agent or agents, shall at all reasonable times have access to, for the purpose of examination, and the right to copy any documentary evidence of any corporation being investigated or proceeded against; and the commission shall have power to require by subpoena the attendance and testimony of witnesses and the production of all such documentary evidence relating to any matter under investigation. * * *

Such attendance of witnesses, and the production of such documentary evidence, may be required from any place in the United States, at any designated place of hearing. And in case of disobedience to a subpoena the commission may invoke the aid of any court of the United States in requiring the attendance and testimony of witnesses and the production of documentary evidence.

Any of the district courts of the United States within the jurisdiction of which such inquiry is carried on may, in case of contumacy or refusal to obey a subpoena issued to any corporation or other person, issue an order requiring such corporation or other person to appear before the commission, or to produce documentary evidence if so ordered, or to give evidence touching the matter in question; and any failure to obey such order of the court may be punished by such court as a contempt thereof * * *"

month during the period December 1963 through July 1965, to [five named companies]."

Paragraph 1 of the subpoena calls for all financial records

"which relate directly or indirectly to volumes of milk handled, brokered or purchased for each month during the period December 1963 through July 1965, from Harmony Dairy * * * or Coshocton Dairy Cooperative Company * * * and which relate to financial settlements made for such milk or for any services rendered in connection therewith with these or other persons."

Pursuant to this paragraph, the respondent has produced those records which relate to milk "purchased" from Coshocton and Harmony and the records relating to services rendered in connection with such purchases. The Secretary here seeks inforcement of the subpoena as it relates to the records of milk "handled" or "brokered" from Coshocton and Harmony.

The respondent urges the interpretation of the subpoena to be that Paragraph 1 calls only for records relating to the *purchase* of milk from Coshocton or Harmony, and that records relating to the brokerage or handling of Coshocton or Harmony milk is restricted by Paragraph 2 to that which eventually reaches five named companies. This interpretation seems contrary to the explicit language of the subpoena.

The two paragraphs, while to some extent overlapping, are not co-extensive. Paragraph 1 deals with records of all milk handled, brokered or purchased from Coshocton and Harmony, no matter what the final destination; paragraph 2 deals with records of all milk, regardless of source, which is "handled, brokered or sold" by respondent to five named companies.

■ Therefore, to the extent that the respondent has not produced all financial

records which relate to Coshocton milk "handled, brokered or purchased", unrestricted as to the companies to which the milk was brokered, the respondent has not complied with the subpoena, and if the subpoena is otherwise valid, compliance will be ordered.

The respondent's second contention is that the enforcement of the subpoena would constitute an unreasonable search and seizure and violate the Fourth Amendment of the Constitution.

In Oklahoma Press Publishing Company v. Walling, 327 U.S. 186, at page 208, 66 S.Ct. 494, at page 505, 90 L.Ed. 614 (1946), the Supreme Court of the United States stated:

"Without attempt to summarize or accurately distinguish all of the cases, the fair distillation, in so far as they apply merely to the production of corporate records and papers in response to a subpoena or order authorized by law and safeguarded by judicial sanction, seems to be that the Fifth Amendment affords no protection by virtue of the self-incrimination provision, whether for the corporation or for its officers; and the Fourth, if applicable, at the most guards against abuse only by way of too much indefiniteness or breadth in the things required to be 'particularly described,' if also the inquiry is one the demanding agency is authorized by law to make and the materials specified are relevant. The gist of the protection is in the requirement, expressed in terms, that the disclosure sought shall not be unreasonable."

■ The purpose of the Agriculture Marketing Act, as expressed in § 1 (7 U.S.C. § 601), is to overcome "disruption of the orderly exchange of commodities in interstate commerce" and conditions found to "burden and obstruct the normal channels of interstate commerce." [2]

2. Congressional policy is set forth in § 602 of the Agricultural Marketing Agreement Act:
  "It is declared to be the policy of Congress—

  (1) Through the exercise of the powers conferred upon the Secretary of Agriculture under this chapter, to establish and maintain such orderly marketing conditions for agricultural commodities in

In the case of milk, Congress established a system[3] of fixing prices to be paid to producers distributing the total value of all milk sold in a specified market among the producers supplying that market. The regulations have been explained and sustained in United States v. Rock Royal Co-Operative, 307 U.S. 533, 59 S.Ct. 993, 83 L.Ed. 1446 (1939); H. P. Hood & Sons, Inc. v. United States, 307 U.S. 588, 59 S.Ct. 1019, 83 L.Ed. 1478 (1939).

 I cannot agree with the contention of the respondent that the disclosures here sought are "unreasonable" in view of the validity and relevancy of the investigation which the Secretary is attempting to make into the practices and marketing policies under the provisions of the Act.

The respondent's suggestion that the subpoena is unreasonable because it is too broad and sweeping was answered in Fidelity-Philadelphia Trust Co., supra, 248 F.Supp. at pages 492–493:

> " * * * the subject of the investigation is the possible violation of the minimum pricing provisions * * * True, the subpoena is broad, but so is the investigation, and the burden of production has been softened by the requirement of the subpoena that the documents be produced at respondent's place of business." [4]

The respondent further suggests that the information sought by the Secretary is unnecessary to the investigation and prosecution of regulated handlers under the Act, and that, therefore, the only reason the Secretary is seeking information from the respondent here is "to in some way find Respondent guilty of vio-

interstate commerce as will establish, as the prices to farmers, parity prices as defined by section 1301(a) (1) of this title.

(2) To protect the interest of the consumer * * *

* * * * * * *

(4) * * * to establish and maintain such orderly marketing conditions for any agricultural commodity enumerated in section 608c(2) of this title as will provide, in the interests of producers and

lating the Federal Milk Marketing Agreement Act, or some other unnamed Federal crime or crimes." [5] There is no evidence in the record that would support such a contention; and as a surmise, it has no probative or persuasive value.

Therefore, in view of the finding that the investigation is statutorily authorized, that the testimony and documents sought are relevant to the investigation, and that the demand, as made, is explicit and not excessive or unreasonable in relation to the investigation, compliance with the subpoena will be ordered.

This opinion incorporates Findings of Fact and Conclusions of Law pursuant to Federal Rule of Civil Procedure 52.

consumers, an orderly flow of the supply thereof to market throughout its normal marketing season to avoid unreasonable fluctuations in supplies and prices."

3. Pursuant to § 8c(5) of the Act, 7 U.S.C. § 608c(5).

4. Neither is this a problem here.

5. Respondent's Supplemental Brief, Page 13.