UNITED STATES of America

v.

Andrew E. HILL and J.E. Pinkerton, Appellants.

UNITED STATES of America

v.

Dennis JUREN, Appellant.

UNITED STATES of America

v.

Edward W. CROMEY, Appellant.

Nos. 81–2171, 82–1204 and 82–1205.

United States Court of Appeals, District of Columbia Circuit.

Nov. 9, 1982.

John D. Taurman, Washington, D.C., was on the petition for rehearing and suggestion for rehearing en banc for appellants in No. 81–2171.

Robert E. Montgomery, Jr. and Peter Buscemi, Washington, D.C., were on the petition for rehearing and suggestion for rehearing en banc for appellant in No. 82–1204.

William E. Nelson and Sherlee S. Nelson, Washington, D.C., were on the petition for rehearing and suggestion for rehearing en banc for appellant in No. 82–1205.

Stanley S. Harris, U.S. Atty., David L. Anderson, and Charles L. Cope, Attys., Dept. of Energy, Washington, D.C., were on the response to the petition for rehearing and suggestion for rehearing en banc for appellees.

Before WALD and EDWARDS, Circuit Judges, and WILLIAM J. JAMESON,* United States District Judge for the District of Montana.

Opinion for the Court filed by Circuit Judge HARRY T. EDWARDS.

On Petition for Rehearing

HARRY T. EDWARDS, Circuit Judge:

These three appeals involve challenges to District Court orders enforcing investigatory subpoenas issued by the Department of Energy ("DOE"). Because the appellants present a common question concerning the jurisdiction of the District Court, we resolve all three appeals in this opinion. For the reasons set forth below, we hold that section 645 of the Department of Energy Organization Act ("DOEOA"), 42 U.S.C. § 7255 (Supp. IV 1980), does not confer on the District Court subject matter jurisdiction or the power of extraterritorial service of process in DOE subpoena enforcement proceedings and, accordingly, that the District Court lacked jurisdiction to enforce the subpoenas issued to the appellants.

## I. BACKGROUND

Each of these cases stems from an investigation of industry compliance with the DOE's Mandatory Petroleum Price and Allocation Regulations, 10 C.F.R. pts. 205, 210–12 (1982). Andrew E. Hill and J.E. Pinkerton, appellants in No. 81–2171, are officers of the Hill Petroleum Company, a Texas corporation. On May 11, 1981, the DOE issued subpoenas *ad testificandum* directing Hill and Pinkerton to appear at the DOE office in Houston, Texas and to testify concerning "purchases, sales, exchanges and processing of crude oil and the purchase and sale of its refined product[s]" by Hill Petro-

leum Company and Goldberg Refining, Ltd. When Hill and Pinkerton declined to comply with the subpoenas, the Government sought enforcement in the District Court for the District of Columbia, which effected extraterritorial service of process. The Government alleged that the District Court had jurisdiction to enforce the subpoenas under section 645 of the DOEOA,[1] section 13(e) of the Federal Energy Administration Act ("FEAA"),[2] and section 206 of the Economic Stabilization Act ("ESA").[3] The District Court rejected appellants' several attacks on the validity of the subpoenas and ordered their enforcement, basing its jurisdiction solely on section 645 of the DOEOA. *United States v. Hill,* 525 F.Supp. 621 (D.D. C.1981).[4]

Dennis Juren, appellant in No. 82–1204, and Edward W. Cromey, appellant in No. 82–1205, are both officers of the Tesoro Petroleum Company, a Texas corporation. On July 17, 1981, the DOE issued subpoenas *ad testificandum* directing them to appear at the DOE office in Washington, D.C. and to testify concerning transactions between their company and several other petroleum companies. Juren and Cromey refused to comply, and the Government sought enforcement of the subpoenas in the District Court for the District of Columbia. The court's process was served extraterritorially, and the Government asserted the same jurisdictional grounds as it had in *Hill.* As in *Hill,* the District Court rejected appellants' challenges to the subpoenas and ordered their enforcement, again basing its jurisdiction solely on section 645 of the DOEOA. *United States v. Juren,* Misc. No. 82–15 (D.D.C. Feb. 17, 1982); *United States v. Cromey,* Misc. No. 82–16 (D.D.C. Feb. 17, 1982); *see* Transcript of February 16, 1982 Hearing at 41–42, *reprinted in* Juren Appendix at 21–22.

---

* Sitting by designation pursuant to 28 U.S.C. § 294(d) (Supp. IV 1980).

1. 42 U.S.C. § 7255 (Supp. IV 1980).

2. 15 U.S.C. § 772(e) (1976).

3. 12 U.S.C. § 1904 note (1976) (incorporated by § 5(a) of the Emergency Petroleum Allocation Act ("EPAA"), 15 U.S.C. § 754(a)(1) (1976)).

4. Because it found that § 645 provided a sound statutory basis for both subject matter and personal jurisdiction, the District Court did not consider the sufficiency of the other statutory provisions advanced by the Government as independent jurisdictional grants. *United States v. Hill,* 525 F.Supp. at 624.

The four respondents to the subpoena enforcement actions appealed the three District Court orders to this court, which originally affirmed by order. *United States v. Hill,* 684 F.2d 1033 (D.C.Cir.1982) (speaking order). The cases are now before the court on appellants' petition for rehearing. This court has jurisdiction to review the final orders of the District Court pursuant to 28 U.S.C. § 1291 (1976). *FTC v. Texaco, Inc.,* 555 F.2d 862, 873 n. 21 (D.C.Cir.) (en banc), *cert. denied,* 431 U.S. 974, 97 S.Ct. 2940, 53 L.Ed.2d 1072 (1977); *see Cobbledick v. United States,* 309 U.S. 323, 330, 60 S.Ct. 540, 543, 84 L.Ed. 783 (1940).[5]

## II. JURISDICTION OF THE DISTRICT COURT

### A. *General Principles*

#### 1. *Subject Matter Jurisdiction*

■ We begin our analysis of the District Court's authority to enforce subpoenas issued by the DOE with the accepted premise that federal courts must "scrupulously confine their own jurisdiction to the precise limits which [a federal] statute has defined." *Victory Carriers, Inc. v. Law,* 404 U.S. 202, 212, 92 S.Ct. 418, 425, 30 L.Ed.2d 383 (1971) (quoting *Healy v. Ratta,* 292 U.S. 263, 270, 54 S.Ct. 700, 703, 78 L.Ed. 1248 (1934)).

It is a principle of first importance that the federal courts are courts of limited jurisdiction.... They are empowered to hear only those cases that (1) are within the judicial power ..., and (2) that have been entrusted to them by a jurisdictional grant by the Congress.

... The presumption is that a federal court lacks jurisdiction in a particular case until it has been demonstrated that jurisdiction over the subject matter exists.

13 C. WRIGHT, A. MILLER & E. COOPER, FEDERAL PRACTICE AND PROCEDURE § 3522 (1975) (footnotes omitted). It is clear, moreover,

---

**5.** The cases now before us raise the initial issue whether the appeals from the District Court are properly before this court or before the Temporary Emergency Court of Appeals ("TECA"). The TECA was created to hear appeals from federal district court decisions arising under the ESA. ESA Amendments of 1971, Pub.L. No. 92–210, tit. II, § 211(b), 85 Stat. 743, 749, *reprinted in* 12 U.S.C. § 1904 note (1976). The EPAA incorporated the ESA provisions for exclusive TECA review of district court orders under the ESA and the EPAA. 15 U.S.C. § 754(a)(1) (1976). This "provision thus carved out a limited exception to the broad jurisdiction of the courts of appeals over 'appeals from all final decisions of the district courts of the United States.' 28 U.S.C. § 1291." *Bray v. United States,* 423 U.S. 73, 74, 96 S.Ct. 307, 309, 46 L.Ed.2d 215 (1975) (per curiam).

While the TECA's jurisdiction "of all appeals from the district courts of the United States in cases and controversies arising under" the ESA and the EPAA is exclusive, ESA, § 211(b)(2), 12 U.S.C. § 1904 note (1976), it is not all-encompassing. Rather, the TECA has jurisdiction only over issues arising under the ESA and the EPAA that have been adjudicated in the district court. *Texaco Inc. v. DOE,* 616 F.2d 1193, 1198 (Em.App.1979); *Coastal States Mktg., Inc. v. New England Petroleum Corp.,* 604 F.2d 179, 187 (2d Cir.1979). Moreover, the underlying basis of the case before the court is not determinative of jurisdiction. In deciding whether it has jurisdiction, the TECA "look[s] to the nature of the issue that is presented to

... [it] and not to the nature of the case or controversy presented below." *MGPC, Inc. v. DOE,* 673 F.2d 1277, 1281 (Em.App.1982).

The DOE investigations underlying the present cases concern compliance with regulations promulgated under the ESA and the EPAA. The District Court, however, based its jurisdiction to enforce the subpoenas *solely* on § 645 of the DOEOA. At least with regard to the issue of the District Court's jurisdiction under § 645, therefore, we do not believe that the TECA has appellate jurisdiction. *Texaco Inc. v. DOE,* 616 F.2d at 1195; *cf. United States v. Wickland,* 619 F.2d 75, 78 (Em.App.1980) (whether the DOE can be estopped from enforcing subpoena power conferred by the EPAA is an issue involving the EPAA over which the TECA has exclusive jurisdiction). Thus, as the Government concedes, we may consider on appeal whether § 645 of the DOEOA confers on the District Court subject matter jurisdiction and the power of extraterritorial service of process in DOE subpoena enforcement proceedings. Because we conclude that it does not, we need not decide whether the other issues raised by the appellants are properly before this court or are within the TECA's exclusive jurisdiction. On this basis, we deny the Government's motion to dismiss. *See United States v. Juren,* 687 F.2d 493 (Em. App.1982) (affirming district court order rejecting appellants' substantive challenges to the DOE's subpoenas).

that "[t]he fact that Congress has legislated in a specific area, without more, does not empower a federal court to adjudicate matters arising from or requiring an interpretation of that legislation. Rather, a specific grant of subject matter jurisdiction must exist before a federal tribunal may so act." *Murray v. Murray,* 621 F.2d 103, 107 (5th Cir.1980). Unless district courts have been accorded subject matter jurisdiction to enforce DOE subpoenas under section 645 of the DOEOA, the trial court was without authority to act as it did in these cases.

### 2. *Personal Jurisdiction*

Even if the District Court possessed subject matter jurisdiction under section 645 or some other statutory provision, *see* Part II.D.1. *infra,* that would not end our inquiry. The court must also have had personal jurisdiction over the appellants to enforce the DOE subpoenas against them. On this latter point, there is no doubt that "[a]part from specific exceptions created by Congress the jurisdiction of the district courts is territorial." *Georgia v. Pennsylvania Railroad,* 324 U.S. 439, 467, 65 S.Ct. 716, 731, 89 L.Ed. 1051 (1945). Personal jurisdiction in a civil suit implies, among other things, either voluntary appearance by the defendant or valid service of process on him at the place where he may be found. *See Robertson v. Railroad Labor Board,* 268 U.S. 619, 622, 45 S.Ct. 621, 622, 69 L.Ed. 111 (1925).

Congress, of course, could authorize suits under federal law in any inferior federal tribunal, *id.* at 622, 45 S.Ct. at 622; *Hanes*

Supply Co. v. Valley Evaporating Co., 261 F.2d 29, 34 (5th Cir.1958); *see* U.S. CONST. art. III, § 1, and provide that the process of every district court shall run into every part of the United States, *United States v. Union Pacific Railroad,* 98 U.S. 569, 604, 25 L.Ed. 143 (1878); *Toland v. Sprague,* 37 U.S. (12 Pet.) 300, 328, 9 L.Ed. 1093 (1838). But where Congress has not done so, rule 4(f) of the Federal Rules of Civil Procedure normally confines the geographical area in which a district court's process can be served to "the territorial limits of the state in which the district court is held," FED.R. CIV.P. 4(f); service outside the state is permitted only "when authorized by a statute of the United States" or by some other specific provision of the Federal Rules, *id.; see Mississippi Publishing Corp. v. Murphree,* 326 U.S. 438, 444–46, 66 S.Ct. 242, 245–46, 90 L.Ed. 185 (1946).[6]

■ To assess the propriety of the District Court's exercise of enforcement jurisdiction on the basis of extraterritorial service of process, therefore, we must determine whether Congress has created a "specific exception" to the usual rule.[7] Such exceptions may be created either explicitly[8] or implicitly. In *FTC v. Browning,* 435 F.2d 96 (D.C.Cir.1970), for example, this court held that the third paragraph of section 9 of the Federal Trade Commission Act ("FTC Act"),[9] impliedly authorized extraterritorial service of process in proceedings to enforce investigative subpoenas issued by the Federal Trade Commission ("FTC" or

---

**6.** Rule 4(f) governs "proceedings to compel the giving of testimony or production of documents in accordance with a subpoena issued by an officer or agency of the United States under any statute of the United States except as otherwise provided by statute or by rules of the district court or by order of the court in the proceedings." FED.R.CIV.P. 81(a)(3).

**7.** *See* 3 B. MEZINES, J. STEIN & J. GRUFF, ADMINISTRATIVE LAW § 21.02[2][a] (1982). Neither the Government nor the District Court suggested that the Federal Rules of Civil Procedure authorize extraterritorial service of process in DOE subpoena enforcement actions. The exception for service authorized "by these rules" "incorporates the service provisions found in Rules

4(d)(7), 4(e), and 4(i) and thus makes it clear that service made pursuant to state law is not confined to the territorial limits of the state when state law permits extraterritorial service." 4 C. WRIGHT & A. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1126 (1969). Since there is no argument that service of process in these cases was grounded in the District of Columbia Code, we need not consider this exception.

**8.** *See, e.g.,* 15 U.S.C. §§ 5, 25 (1976); 28 U.S.C. §§ 1391(e), 2321(c), 2413 (1976 & Supp. IV 1980).

**9.** 15 U.S.C. § 49 (1976).

"Commission").[10]  But if no exception can be found in the statute under which the District Court acted, its service of process on appellants was invalid, and it lacked personal jurisdiction to enforce the DOE's subpoenas.[11]

B. *Section 645*

In each of these cases, the District Court relied solely on section 645 of the DOEOA as the statutory basis for both subject matter and personal jurisdiction.  That section grants the Secretary of Energy the same power *to issue subpoenas* as the FTC possesses under section 9 of its enabling legislation.  Section 645 states:

> For the purpose of carrying out the provisions of this chapter, *the Secretary,* or his duly authorized agent or agents, *shall have the same powers and authorities as the Federal Trade Commission under section 49 of title 15* with respect to all functions vested in, or transferred or delegated to, the Secretary or such agents by this chapter.

42 U.S.C. § 7255 (Supp. IV 1980) (emphasis added).  The relevant portions of section 9 of the FTC Act read as follows:

> *[T]he Commission shall have power to require by subpoena the attendance and testimony of witnesses and the produc-*

*tion of all . . . documentary evidence relating to any matter under investigation. . . .*

Such attendance of witnesses, and the production of such documentary evidence, may be required from any place in the United States, at any designated place of hearing.  And *in case of disobedience to a subpoena the Commission may invoke the aid of any court of the United States in requiring the attendance and testimony of witnesses and the production of documentary evidence.*

*Any of the district courts of the United States within the jurisdiction of which such inquiry is carried on may,* in case of contumacy or refusal to obey a subpoena issued to any person, partnership, or corporation *issue an order requiring such person, partnership, or corporation to appear before the Commission, or to produce documentary evidence if so ordered, or to give evidence touching the matter in question;* and any failure to obey such order of the court may be punished by such court as a contempt thereof.

15 U.S.C. § 49 (1976) (emphasis added).

In *United States v. Tesoro Petroleum Corp.,* 503 F.Supp. 868 (D.D.C.1980), the District Court found that the authority accorded to the Secretary of the DOE by

---

**10.** *See also FTC v. Jim Walter Corp.,* 651 F.2d 251, 254–55 (5th Cir.1981); *Federal Election Comm'n v. Committee to Elect Lyndon LaRouche,* 613 F.2d 849, 858–62 (D.C.Cir.1979), *cert. denied,* 444 U.S. 1074, 100 S.Ct. 1019, 62 L.Ed.2d 755 (1980).

The *Browning* court offered three justifications for its decision.  The opinion noted, first, that since the third paragraph of § 9 limited the place of suit for enforcement of FTC subpoenas to the jurisdiction in which the investigation was being carried on, it was necessary to imply authority for extraterritorial service of process "to effectuate the purpose of the regulatory scheme." *FTC v. Browning,* 435 F.2d at 100.  Since we find that § 645 does not incorporate the third paragraph of § 9, this argument has no relevance in these cases.  *See* note 12 *infra.*

The second rationale underlying the decision in *Browning* emphasized the national character of the FTC's investigations.  Because enforcement proceedings against similarly situated individuals present identical legal issues, "[i]t makes for uniformity in the application of the

law and economy of judicial administration to center the enforcement proceedings in a single court." 435 F.2d at 100.  Finally, the court found some support for implying a grant of authority for extraterritorial service of process in the legislative history of the FTC Act.  *Id.* at 100–01.  Neither of these arguments justifies implying judicial authority for extraterritorial service of process under the DOEOA.  *See* note 17 & Part II.D.2. *infra.*

**11.** "In the absence of authority under a federal statute, service outside the forum state will be quashed unless objections to service or venue requirements are waived or the service is otherwise permissible under Rule 4(d)(7), Rule 4(e), or Rule 4(i)." 4 C. Wright & A. Miller, *supra* note 7, at § 1125 (footnotes omitted).  The appellants herein cannot be said to have waived their objections to the District Court's lack of personal jurisdiction, improper venue, or insufficiency of service of process.  *See* Fed.R.Civ.P. 12(h)(1); 5 C. Wright & A. Miller, *supra* note 7, at § 1391.

section 645 may be read to imply a grant of coextensive extraterritorial jurisdiction to district courts petitioned to enforce DOE subpoenas. In so doing, the court ruled that the DOEOA incorporated not only the first and second paragraphs of section 9 of the FTC Act, which outline the powers of the Commission, but also paragraph three, the provision granting extraterritorial *subpoena enforcement* authority to district courts in jurisdictions wherein the Commission is conducting its investigations. *Id.* at 871–72.[12] In each of the cases now before us, the District Court specifically relied on this holding in *Tesoro Petroleum* to conclude that section 645 conferred on it both subject matter and personal jurisdiction to enforce the DOE subpoenas. We cannot agree.

The interpretation of section 645 must begin, of course, with the statutory lan-

guage that Congress used to express its intent.[13] Notably, the section's plain language does not support the Government's claim that it confers jurisdiction on the District Court.[14] On its face, section 645 declares only that "the Secretary . . . shall have the same powers and authorities [to issue subpoenas] as the Federal Trade Commission." At least since *ICC v. Brimson,* 154 U.S. 447, 485, 14 S.Ct. 1125, 1136, 38 L.Ed. 1047 (1894), federal courts have drawn a sharp distinction between agency power to *issue* subpoenas and judicial power to *enforce* them. *E.g., United States v. Exxon Corp.,* 628 F.2d 70, 77 (D.C.Cir.) (per curiam), *cert. denied,* 446 U.S. 964, 100 S.Ct. 2940, 64 L.Ed.2d 823 (1980); *United States v. Bell,* 564 F.2d 953, 959 (Em.App.1977); *see* L. JAFFE, JUDICIAL CONTROL OF ADMINISTRATIVE ACTION 115–17 (1965).[15] Section

**12.** To the best of our knowledge, no other court has held that § 645 confers on the district courts either subject matter jurisdiction or the power to serve process extraterritorially. *But see United States v. Stoltz,* 525 F.Supp. 617 (D.D.C.1981) (by implication).

The three bases on which the *Tesoro Petroleum* court rested its conclusion are easily undermined. The court found, first, that because the DOEOA incorporated the language of the FTC Act and did not merely model that Act, "[i]t would be logical to imply . . . a congressional intent to give DOE the same powers as those given to the FTC." *United States v. Tesoro Petroleum Corp.,* 503 F.Supp. at 871. By ignoring the possibility that Congress drew a distinction between the power of the Secretary and the power of the district courts, this argument simply assumes its conclusion.

The second reason offered by the *Tesoro Petroleum* court to justify its conclusion was that the "fragmentation" of investigations resulting from a refusal to imply authority for extraterritorial service of process "would frustrate an agency's purpose of maintaining coherent, nationwide supervision over the subject matter of its regulatory efforts." *Id.* This concern is more properly addressed to Congress than to the courts, and an examination of the provisions regarding subpoena enforcement in the statutes incorporated by the DOEOA suggests that Congress has yet to recognize the need for extraterritorial enforcement authority in this area. *See* note 40 *infra.*

The *Tesoro Petroleum* court's final rationale—that extraterritorial service of process was necessary to avoid "the situation where a district court would have exclusive jurisdiction over an enforcement proceeding and yet be

deprived of the authority to compel the attendance of the respondent absent his voluntary entrance into the district," *id.*—is equally unavailing. This argument has absolutely no force in this context. Although the third paragraph of § 9 of the FTC Act can be read as limiting the courts in which subpoena enforcement proceedings can be brought, *FTC v. Browning,* 435 F.2d at 100; *accord FTC v. Jim Walter Corp.,* 651 F.2d 251, 254 (5th Cir.1981), that limitation applies to the DOE only if § 645 incorporates *all* of § 9. Since we find that § 645 does not incorporate the third paragraph of § 9, we give no weight to this argument.

**13.** *See Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.,* 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980).

**14.** The fact that § 645 incorporates the language of § 9 of the FTC Act, *see United States v. Tesoro Petroleum Corp.,* 503 F.Supp. at 871, does not tell us whether it incorporates *some* or *all* of that language. "The reference terminology may be either specific or general in nature, and it may extend to an entire statutory scheme, or to only one statute in a scheme, or to only one provision or section of a statute." Sentell, *"Reference Statutes"—Borrow Now and Pay Later?,* 10 GA.L.REV. 153, 154 (1975).

**15.** This "[b]ifurcation of the power, on the one hand of the agency to issue subpoenas and on the other hand of the courts to enforce them, is an inherent protection against abuse of subpoena power." *United States v. Bell,* 564 F.2d at 959; *accord United States v. Security State Bank & Trust,* 473 F.2d 638, 641 (5th Cir.1973);

645, in short, makes no reference whatsoever to the power of courts to enforce subpoenas,[16] and its plain language thus provides no basis for inferring a special congressional grant of extraterritorial jurisdiction to enforce DOE subpoenas.[17]

The absence of any language in section 645 specifically incorporating the jurisdictional provisions of section 9 of the FTC Act is especially telling when section 645 is compared with other statutory grants of subpoena power. On a number of occasions, Congress has conferred subpoena issuance authority on administrative agencies by reference to the FTC's powers under section 9 of the FTC Act.[18] In four of these statutes, Congress explicitly incorporated both the agency authority to issue subpoenas, found in the first two paragraphs of section 9 of the FTC Act, and the judicial authority to enforce subpoenas, found in the third paragraph of section 9.[19] These statutes clearly evince Congress' awareness of the distinction between *subpoena issuance* and *subpoena enforcement* and its

F. COOPER, ADMINISTRATIVE AGENCIES AND THE COURTS 129–31 (1951).

**16.** In its arguments to this court, the Government has confused the DOE's power to seek enforcement of its subpoenas and the courts' power to grant or deny that enforcement. The second paragraph of § 9 of the FTC Act, which all parties agree is incorporated by reference in § 645 of the DOEOA, states in part: "[I]n case of disobedience to a subpoena *the Commission may invoke the aid of any court of the United States* in requiring the attendance and testimony of witnesses and the production of documentary evidence." 15 U.S.C. § 49 (1976) (emphasis added). This sentence grants the agency *standing* to seek enforcement of its subpoenas, but it does not confer *jurisdiction* on the federal courts. Rather, the phrase "any court of the United States" must be interpreted as "any court of competent jurisdiction." *See Robertson v. Railroad Labor Bd.,* 268 U.S. at 627, 45 S.Ct. at 624.

**17.** The legislative history of § 645 also provides no support for the Government's position that the section was intended as both a grant of subpoena issuance authority and a grant of extraterritorial subpoena enforcement jurisdiction. Section 645 of the DOEOA originated in the Senate bill to establish the DOE. S. 826, 95th Cong., 1st Sess. § 605 (1977). The Senate Report commented:

> This section grants the Secretary the power to issue a subpoena in carrying out the provisions of this act. The power is the same as those granted to the Federal Trade Commission in section 9 of the Federal Trade Commission Act, and applies to all responsibilities vested in the Secretary by this act.

S.REP. No. 164, 95th Cong., 1st Sess. 50, *reprinted in* 1977 U.S.CODE CONG. & AD.NEWS 854, 904 [hereinafter cited as S.REP. No. 164]; *see also* S.Rep. No. 367, 95th Cong., 1st Sess. 96 (1977) (Conference Report). The Senate Report, like § 645 itself, thus addresses only the Secretary's power to *issue a subpoena* and makes no reference to any legislative intent to confer enforcement jurisdiction on the district courts.

**18.** 7 U.S.C. § 222 (1976) (Packers and Stockyards Act of 1921); 7 U.S.C. § 610(h) (1976) (Agricultural Adjustment Act); 7 U.S.C. § 2046 (1976) (Farm Labor Contractor Registration Act of 1963); 7 U.S.C. § 2146(c) (1976) (Animal Welfare Act Amendments of 1976); 15 U.S.C. § 756(b) (1976) (FTC power under the EPAA); 21 U.S.C. § 467d (1976) (Poultry Products Inspection Act); 21 U.S.C. § 677 (1976) (Meat Inspection Act); 21 U.S.C. § 1051 (1976) (Egg Products Inspection Act); 26 U.S.C. § 5274 (1976) (Excise Tax Technical Changes Act of 1958); 27 U.S.C. § 202(c) (1976) (Federal Alcohol Administration Act); 29 U.S.C. § 177(c) (1976) (Labor Management Relations Act of 1947); 29 U.S.C. § 209 (1976) (Fair Labor Standards Act of 1938); 29 U.S.C. § 308(e) (1976) (Welfare and Pension Plans Disclosure Act); 29 U.S.C. § 521(b) (1976) (Labor-Management Reporting and Disclosure Act of 1959); 29 U.S.C. § 835(a)(3) (Supp. IV 1980) (Comprehensive Employment and Training Act Amendments of 1977); 29 U.S.C. § 1134(c) (1976) (Employee Retirement Income Security Act of 1974); 33 U.S.C. § 944(d)(3) (1976) (Longshoremen's and Harbor Workers' Compensation Act Amendments of 1972); 50 U.S.C. App. § 1983(b) (1976) (Evacuation Claims Act).

**19.** *See* 7 U.S.C. § 2146(c) (1976); 21 U.S.C. §§ 467d, 677, 1051 (1976).

The language of the Animal Welfare Act is illustrative. It provides that a number of provisions, including §§ 9 and 10 of the FTC Act, "are made applicable to the jurisdiction, powers, and duties of the Secretary in administering and enforcing the provisions of this chapter and to any person, firm, or corporation with respect to whom such authority is exercised." It then states that "[t]he powers conferred by said sections 49 and 50 of title 15 on the district courts of the United States may be exercised for the purposes of this chapter by any district court of the United States." 7 U.S.C. § 2146(c) (1976).

knowledge of what language to use when it wishes to incorporate both the issuance and enforcement powers found in section 9 of the FTC Act. Congress' failure to use that language in section 645 of the DOEOA, like the plain language of the section, indicates that it did not intend section 645 to confer on district courts subject matter jurisdiction or the power of extraterritorial service of process in DOE subpoena enforcement proceedings.[20]

## C. Judicial Constructions of Similar Statutes

The Government has referred us to judicial interpretations of several sections of the United States Code that grant subpoena powers by reference to section 9 of the FTC Act, and our research has disclosed other cases interpreting those sections as conferring enforcement jurisdiction on the federal courts. When examined closely, however, these cases supply little or no support for the proposition that section 645 of the DOEOA authorizes extraterritorial service of process in DOE enforcement proceedings.

First, almost without exception, the courts that have stated or implied that provisions incorporating section 9 of the FTC Act confer jurisdiction on the federal courts either were not faced with a jurisdictional challenge or did not discuss the issue.[21] Second, incorporation of the paragraph of section 9 that confers extraterritorial enforcement jurisdiction was not essential to the result in any of the cases in which a jurisdictional issue was presented and resolved.[22] We have found no case in which

**20.** Cf. Touche Ross & Co. v. Redington, 442 U.S. 560, 572, 99 S.Ct. 2479, 2487, 61 L.Ed.2d 82 (1979) (rejecting implied cause of action under § 17(a) of the Securities Exchange Act in part because "when Congress wished to provide a private damages remedy, it knew how to do so and did so expressly"); Blue Chip Stamps v. Manor Drug Stores, 421 U.S. 723, 734, 95 S.Ct. 1917, 1925, 44 L.Ed.2d 539 (1975) (confining relief under § 10(b) of the Securities Exchange Act to actual purchasers or sellers in part for the same reason).

**21.** See, e.g., Oklahoma Press Publishing Co. v. Walling, 327 U.S. 186, 199–200 & n. 24, 66 S.Ct. 494, 500–501 & n. 24, 90 L.Ed. 614 (1946); Donovan v. Mehlenbacher, 652 F.2d 228, 230 (2d Cir.1981); Goldberg v. Truck Drivers Local Union No. 299, 293 F.2d 807, 810 & n. 3 (6th Cir.), cert. denied, 368 U.S. 938, 82 S.Ct. 379, 7 L.Ed.2d 337 (1961); see also Cudahy Packing Co. v. Holland, 315 U.S. 357, 359–60, 62 S.Ct. 651, 652–53, 86 L.Ed. 895 (1942); United States v. Exxon Corp., 628 F.2d at 73–76; United States v. Marshall Durbin & Co., 363 F.2d 1, 4–5 (5th Cir.1966); Durkin v. Fisher, 204 F.2d 930, 931 & n. 1 (7th Cir.), cert. denied, 346 U.S. 897, 74 S.Ct. 220, 98 L.Ed. 398 (1953); Mississippi Rd. Supply Co. v. Walling, 136 F.2d 391, 394 (5th Cir.), cert. denied, 320 U.S. 752, 64 S.Ct. 57, 88 L.Ed. 447 (1943); Wirtz v. National Maritime Union, 57 Lab.Cas. (CCH) 21,504, 21,-505 (S.D.N.Y.1968); Freeman v. Canned Dairy Prods., Inc., 265 F.Supp. 95, 97 & n. 1 (W.D.Pa. 1966); Freeman v. Brown Bros. Harriman & Co., 250 F.Supp. 32, 33–34 (S.D.N.Y.), aff'd, 357 F.2d 741 (2d Cir.) (per curiam), cert. denied sub nom. Meyer Zausner Sales, Inc. v. Freeman, 384 U.S. 933, 86 S.Ct. 1446, 16 L.Ed.2d 532 (1966); United States v. Tyson's Poultry, Inc., 216 F.Supp. 53, 56 (W.D.Ark.), appeal dismissed, 319 F.2d 860 (8th Cir.1963) (per curiam); Fleming v. Cudahy Packing Co., 41 F.Supp. 910, 914 (S.D.Cal.1941).

**22.** See, e.g., Cudahy Packing Co. v. United States, 15 F.2d 133, 134–35 (7th Cir.1926); Wirtz v. Local No. 502, Int'l Hod Carriers & Common Laborers Union, 217 F.Supp. 155, 155–56 (D.N.J.1962); Fleming v. Easton Pub. Co., 38 F.Supp. 677, 679 (E.D.Pa.1941); Fleming v. Lowell Sun Co., 36 F.Supp. 320, 323–24 (D.Mass.1940), vacated, 120 F.2d 213 (1st Cir. 1941), aff'd by an equally divided Court sub nom. Holland v. Lowell Sun Co., 315 U.S. 784, 62 S.Ct. 793, 86 L.Ed. 1190 (1942) (per curiam).

To the best of our knowledge, none of these cases involved an attempt to enforce an administrative subpoena outside of the district where the respondent was found. District court jurisdiction, therefore, did not depend on the incorporation of the third paragraph of § 9 of the FTC Act. Incorporation of the second paragraph of § 9 gave Department of Labor officials standing to sue, see note 16 supra, and the general grant of federal question jurisdiction extant at the time provided a fully sufficient basis for the district courts' actions, see, e.g., 28 U.S.C. § 41(1) (1940).

These cases, and others interpreting § 9 of the Fair Labor Standards Act ("FLSA"), see, e.g., Oklahoma Press Publishing Co. v. Walling, 327 U.S. 186, 199–200, 66 S.Ct. 494, 500–501, 90 L.Ed. 614 (1946); Cudahy Packing Co. v. Holland, 315 U.S. 357, 359–60, 62 S.Ct. 651, 652–53, 86 L.Ed. 895 (1942), can be discounted for another compelling reason as well. When Congress enacted the FLSA in 1938, it had not enacted any other statute explicitly incorporating both the subpoena issuance power and the subpoena enforcement power of § 9 of the FTC

an objection based on the agency's failure to bring its subpoena enforcement action in the *proper court* was rejected on the basis of the incorporated provisions of section 9 of the FTC Act; rather, the burden of the jurisdictional challenge in each of these cases was that *no court* was empowered to enforce the agency's subpoenas. *See, e.g., Cudahy Packing Co. v. United States,* 15 F.2d 133, 134–35 (7th Cir.1926).

Even absent these problems, we would find it impossible to glean much support from the decided cases. In several of the cases, the court's conclusion that it had jurisdiction was based not on a general incorporation of section 9, but on another provision of the incorporating statute,[23] and every other decided case rests on an incorporating statute that is arguably broader than section 645 of the DOEOA.[24] The inferences that the Government draws from the case law, moreover, are flatly contradicted by a number of the cases it cites.[25]

We conclude, therefore, that, for all practical purposes, we are writing on a clean slate. We find little in the case law on which the Government relies to guide us to

the reading of section 645 that it advocates; certainly nothing in those cases requires us to conclude that section 645 incorporates the third paragraph of section 9 of the FTC Act and thus confers subject matter jurisdiction or authorizes extraterritorial service of process. Bereft of such authority, we turn to fundamental principles of civil procedure and statutory construction, which amply support our holding that section 645 does not confer on the District Court subject matter jurisdiction or the power of extraterritorial service of process in DOE subpoena enforcement proceedings.

### D. *Enforceability of DOE Subpoenas*

In light of the oral arguments and written submissions in these cases, we discern two grounds upon which our reading of section 645 of the DOEOA might be questioned. First, the Government appears to suggest that our construction of section 645 would prevent the DOE from obtaining judicial subpoena enforcement in investigations of matters newly assigned to it by the DOEOA,[26] and thus render its subpoena powers meaningless.[27] Second, the Govern-

Act. Thus, a court interpreting § 9 of the FLSA might reasonably have assumed that Congress intended to incorporate the entirety of § 9 of the FTC Act.

**23.** *See, e.g., Newmark & Co. v. Wirtz,* 330 F.2d 576, 578 (2d Cir.1964).

**24.** *Compare* 42 U.S.C. § 7255 (Supp. IV 1980) ("the Secretary . . . shall have the same powers and authorities as the [FTC] under" § 9) *with* 7 U.S.C. § 222 (1976) (§ 9 is "made applicable to the jurisdiction, powers, and duties of the Secretary in enforcing the provisions of this chapter and to any person subject to the provisions of this chapter"); 7 U.S.C. §§ 610(h), 2046 (1976); 29 U.S.C. §§ 209, 521(b) (1976). Congress' desire to incorporate only the powers granted to the Secretary is more apparent on the face of § 645 of the DOEOA, the narrowest statute it has ever drafted incorporating any part of § 9 of the FTC Act, than on the face of any of the statutes that courts have previously interpreted.

**25.** In *Walling v. La Belle S.S. Co.,* 148 F.2d 198 (6th Cir.1945), for example, the court discussed the incorporation of § 9 of the FTC Act in § 9 of the FLSA: "The applicable provisions in substance provide that . . . [i]n the case of subpoena disobedience, the Commission may

invoke the aid of *any court of the United States of competent jurisdiction,* to require the attendance and testimony of witnesses and the production of documentary evidence." *Id.* at 199 (emphasis added). If the court believed that the FLSA had incorporated § 9 of the FTC Act in its entirety, it most likely would have indicated that enforcement could only be sought from courts within the jurisdiction of which the Commission was conducting its investigation. *FTC v. Browning,* 435 F.2d at 100 (discussed in note 10 *supra* ). *See also General Tobacco & Grocery Co. v. Fleming,* 125 F.2d 596, 598 (6th Cir.1942) (same as *La Belle* ); *Serr v. Sullivan,* 270 F.Supp. 544, 545 (E.D.Pa.1967) (not discussing jurisdiction, but indicating only that 27 U.S.C. § 202(c) "incorporates that portion of the [FTC Act] which authorizes the Commission *to issue subpoenas*") (emphasis added), *aff'd,* 390 F.2d 619 (3d Cir.1968) (per curiam).

**26.** *See* S.REP. No. 164, *supra* note 17, at 50, 1977 U.S.CODE CONG. & AD.NEWS at 904.

**27.** *See Federal Maritime Comm'n v. New York Terminal Conference,* 262 F.Supp. 225, 231 (S.D.N.Y.1966) ("the [subpoena] power itself would be a nullity without the ability to obtain judicial enforcement"), *aff'd,* 373 F.2d 424 (2d Cir.1967); *cf. FTC v. Manager, Retail Credit*

ment argues that even if the district courts could establish their subject matter jurisdiction without relying on the incorporation of the FTC Act's jurisdictional provisions, the unavailability of extraterritorial service of process would force the DOE to institute enforcement proceedings in many different judicial districts and frustrate its statutory mission. We address these contentions in order.

1. *Subject Matter Jurisdiction Under 28 U.S.C. §§ 1331, 1337(a), and 1345*

■ Although statutes creating administrative subpoena powers often contain provisions specifically authorizing judicial enforcement orders,[28] the Judicial Code's general jurisdictional provisions, 28 U.S.C. §§ 1331, 1337(a), 1345 (1976 & Supp. IV 1980), render such specificity unnecessary.[29] We have found no cases squarely holding that these provisions empower the district courts to enforce administrative subpoenas; [30] nevertheless, we have no doubt that

subpoena enforcement proceedings fall within the scope of one or all of these broad grants of subject matter jurisdiction.

On its face, each of the provisions is clearly sufficient to confer subpoena enforcement jurisdiction. At its broadest level, the district courts' federal question jurisdiction extends to "all civil actions arising under the Constitution, laws, or treaties of the United States." [31] More specifically, Congress has granted the district courts original jurisdiction "of any civil action or proceeding arising under any Act of Congress regulating commerce." [32] It has also declared, in section 1345, that "[e]xcept as otherwise provided by Act of Congress, the district courts shall have original jurisdiction of all civil actions, suits or proceedings commenced by the United States, or by any agency or officer thereof expressly authorized to sue by Act of Congress." [33] The exception to section 1345 is interpreted narrowly,[34] and the section's language evinces

---

Co., Miami Branch Office, 515 F.2d 988, 994 (D.C.Cir.1975) ("The presumption against interpreting a statute in a way which renders it ineffective is hornbook law.")

**28.** *See, e.g.,* 15 U.S.C. § 754(a)(1) (1976) (incorporating § 206 of the ESA, 12 U.S.C. § 1904 note (1976)); 15 U.S.C. § 772(e) (1976).

**29.** *Cf.* B. MEZINES, J. STEIN & J. GRUFF, *supra* note 7, at § 21.02[2][a] (footnotes omitted):

On occasion, agency subpoena power is not specifically spelled out in the statute. Instead, the courts have interpreted other powers granted the agency (such as rulemaking) as giving rise to an implied subpoena power. In such instances, district courts have exercised jurisdiction in enforcement proceedings, and it is to be presumed that such action is proper, although the issue of subject matter jurisdiction has not specifically been raised in such a case.

**30.** Several courts have recognized the potential applicability of these sections, but have not reached the issue presented by these cases. *See, e.g., British Auto Parts, Inc. v. NLRB,* 405 F.2d 1182, 1184 (9th Cir.1968) (per curiam), *cert. denied sub nom. Teledyne, Inc. v. NLRB,* 394 U.S. 1012, 89 S.Ct. 1625, 23 L.Ed.2d 39 (1969); *FTC v. Western Gen. Dairies, Inc.,* 432 F.Supp. 31, 34 (N.D.Cal.1977).

**31.** 28 U.S.C. § 1331 (Supp. IV 1980). *See generally Gully v. First Nat'l Bank,* 299 U.S. 109, 57 S.Ct. 96, 81 L.Ed. 70 (1936); London, "*Fed-*

*eral Question" Jurisdiction—A Snare and a Delusion,* 57 MICH.L.REV. 835 (1959); Mishkin, *The Federal "Question" in the District Courts,* 53 COLUM.L.REV. 157 (1953).

**32.** 28 U.S.C. § 1337(a) (Supp. IV 1980). Courts interpret § 1337 broadly to reach any federal statute for which the commerce clause furnishes the predicate; "[i]ndeed a statute comes within Section 1337 if the commerce power is involved in any significant way as the basis for the statute." 13 C. WRIGHT, A. MILLER & E. COOPER, *supra,* at § 3574; *see Murphy v. Colonial Fed. Sav. & Loan Ass'n,* 388 F.2d 609, 614–15 (2d Cir.1967); *Imm v. Union R.R.,* 289 F.2d 858, 860 (3d Cir.), *cert. denied,* 368 U.S. 833, 82 S.Ct. 55, 7 L.Ed.2d 35 (1961). We think that the DOEOA is such a statute.

**33.** 28 U.S.C. § 1345 (1976). By incorporating the first and second paragraphs of § 9 of the FTC Act, § 645 of the DOEOA expressly authorizes the Secretary of the DOE to institute subpoena enforcement proceedings in any court of competent jurisdiction. *See* note 16 *supra.*

**34.** *See Brennan v. Buckeye Indus., Inc.,* 374 F.Supp. 1350, 1353 (S.D.Ga.1974) (emphasis added):

Unless legislation should expressly provide that jurisdiction of a district court is limited by the special jurisdiction provisions of an Act, the right of the United States to sue

Congress' intent to confer jurisdiction over any form of action that the United States might initiate.[35] Standing alone, section 1345 is plainly sufficient to provide jurisdiction in these cases: "Although other special jurisdictional provisions may also give the district court jurisdiction over some cases brought by the United States, the government *need not have any specific statutory authorization for a particular action* inasmuch as general jurisdiction is conferred by Section 1345." [36]

Our research, moreover, has uncovered no evidence that subpoena enforcement actions, which fall within the plain meaning of sections 1331, 1337(a), and 1345, cannot be brought under those provisions. In fact, the cases suggest precisely the opposite conclusion. In *United States v. Lasco Industries, Division of Phillips Industries,* 531 F.Supp. 256 (N.D.Tex.1981), for example, the United States sought judicial enforcement of a subpoena duces tecum issued by

the Director of the National Institute for Occupational Safety and Health. Although the court rejected respondent's argument that 29 U.S.C. § 657(b) (1976) could not provide jurisdiction, it also pointed out that jurisdiction would lie under section 1345 if section 657(b) proved insufficient. *Id.* at 260–61. *Federal Maritime Commission v. New York Terminal Conference,* 262 F.Supp. 225 (S.D.N.Y.1966), *aff'd,* 373 F.2d 424 (2d Cir.1967), involved a similar petition for enforcement of subpoenas issued by the Commission on the application of its hearing counsel. Even if section 27 of the Shipping Act did not confer jurisdiction, the court concluded, the case was properly before it under section 1345. *Id.* at 230. Although this holding is weakened by the court's assertion of an alternative basis of jurisdiction, *id.* at 231, the decision nevertheless strongly supports the proposition that section 1345 provides jurisdiction for judicial enforcement of DOE subpoenas.[37]

under § 1337 or § 1345 is not affected. *The United States may lawfully maintain suits in its own courts to prevent interference with the means it adopts to exercise its powers of government and to carry into effect its policies.*

35. *Compare* 28 U.S.C. § 1345 (1976) ("actions, suits or proceedings") *with* 28 U.S.C. § 1331 (Supp. IV 1980) ("actions") and 28 U.S.C. § 1337(a) (Supp. IV 1980) ("action or proceedings"). This assumes, of course, that the United States has a sufficient interest in maintaining the suit. *See United States v. San Jacinto Tin Co.,* 125 U.S. 273, 8 S.Ct. 850, 31 L.Ed. 747 (1888); 14 C. WRIGHT, A. MILLER & E. COOPER, *supra,* at § 3651.

36. 14 C. WRIGHT, A. MILLER & E. COOPER, *supra,* at § 3651 (footnote omitted) (emphasis added).

37. Several other cases involving subpoena enforcement and the production of records are also relevant. In *NLRB v. British Auto Parts, Inc.,* 266 F.Supp. 368 (C.D.Cal.1967), *aff'd,* 405 F.2d 1182 (9th Cir.1968) (per curiam), *cert. denied sub nom. Teledyne, Inc. v. NLRB,* 394 U.S. 1012, 89 S.Ct. 1625, 23 L.Ed.2d 39 (1969), the Board sought an order compelling the production of records. Although the court held the Board's subpoena enforceable under 28 U.S.C. § 161, it also would have issued an injunction enforcing the Board's *Excelsior* rule. Its language is instructive:

District Courts have jurisdiction under 28 U.S.C. § 1337 "of all suits and proceedings

regulating commerce." This statutory provision vests the district courts with jurisdiction to aid administrative agencies in carrying out their congressionally authorized powers and duties, *despite the absence of any express grant of district court jurisdiction under the agencies' respective enabling acts.*

*Id.* at 374 (emphasis added) (citing many cases). *See also United States v. Hankins,* 581 F.2d 431, 438 n. 11 (5th Cir.1978) (jurisdiction to enforce an IRS summons grounded in 26 U.S.C. § 7402(a) and § 1345), *cert. denied,* 440 U.S. 909, 99 S.Ct. 1218, 59 L.Ed.2d 457 (1979); *NLRB v. Hanes Hosiery Div.—Hanes Corp.,* 384 F.2d 188, 191–92 (4th Cir.1967) (same as *British Auto Parts*), *cert. denied,* 390 U.S. 950, 88 S.Ct. 1041, 19 L.Ed.2d 1141 (1968); *United States v. Nanlo, Inc.,* 519 F.Supp. 723, 724–25 (D.Mass.1981) (jurisdiction to enforce FTC order requiring company to file financial report grounded in 15 U.S.C. §§ 49 and 50 and §§ 1337 and 1345).

The scope of §§ 1337 and 1345 is also illustrated by cases involving administrative inspections. In *Marshall v. Gibson's Prods., Inc.,* 584 F.2d 668 (5th Cir.1978), for example, the Secretary of Labor sued to enjoin an employer to submit to warrantless inspections. Although the court ultimately concluded that the Occupational Safety and Health Act impliedly precluded jurisdiction for injunctive actions brought by the Secretary to exercise his authority under § 8(a) of the Act, its reading of § 1345 is consistent with ours. *See id.* at 674, 676 & n. 10. *See also State Fair v. United*

We conclude, therefore, that sections 1331, 1337(a), and 1345 provide subject matter jurisdiction for proceedings to enforce subpoenas issued under section 645 of the DOEOA by the Secretary of Energy or his duly authorized agents.

### 2. Extraterritorial Service of Process

We recognize, of course, that the general jurisdictional grants of sections 1331, 1337(a), and 1345 are, in some respects, less generous than is the provision found in the third paragraph of section 9 of the FTC Act. Section 9 allows a district court where the inquiry is being carried on to enforce *all* subpoenas issued as part of that inquiry; in a nationwide investigation the FTC may seek enforcement of all subpoenas in a single district court.[38] Because of the limitations on extraterritorial service of process, FED.R.CIV.P. 4(f); *see* Part II.A.2. *supra,* the alternative jurisdictional provisions available to the DOE will not provide it the same convenience for enforcement. Under those alternative provisions, the Government may be required to petition for enforcement of DOE subpoenas in several district courts, wherever the reluctant subpoena respondents might be found.

The Government has suggested that its interest in convenient enforcement of DOE investigatory subpoenas is an adequate policy justification for a broad construction of section 645. Admittedly, it does appear that Congress intended section 645 to augment the DOE's subpoena *issuance* authority. But the Government has pointed to nothing in either the statute or the legislative history that supports a policy argument in favor of *enforcement* of all subpoenas in a single district court,[39] and we surely will not infer that Congress intended to confer extraterritorial subpoena enforcement jurisdiction on the sole basis of the agency's view of appropriate policy.[40] "Jurisdictional statutes are to be construed 'with precision and with fidelity to the terms by which Congress has expressed its wishes.' " *Palmore v. United States,* 411 U.S. 389, 396, 93 S.Ct. 1670, 1675, 36 L.Ed.2d 342 (1973) (quoting *Cheng Fan Kwok v. INS,* 392 U.S. 206, 212, 88 S.Ct. 1970, 1974, 20 L.Ed.2d 1037 (1968)). We are bound to enforce section 645 as written. If the Government prefers a more convenient approach to subpoena enforcement, it must seek the necessary jurisdictional grant from Congress, not from the courts.

States Consumer Prod. Safety Comm'n, 481 F.Supp. 1070, 1074 & n. 6 (N.D.Tex.1979) (§ 1345 confers jurisdiction in action by CPSC for administrative inspection warrant; agency is expressly authorized to sue and court thus has jurisdiction to issue warrant), *modified,* 650 F.2d 1324 (5th Cir.), *vacated as moot,* 454 U.S. 1026, 102 S.Ct. 561, 70 L.Ed.2d 470 (1981); *Marshall v. Huffhines Steel Co.,* 478 F.Supp. 986, 988 (N.D.Tex.1979) (29 U.S.C. § 657(a) empowers OSHA to inspect but makes no explicit provision for issuance of warrants; § 1337 provides explicit jurisdictional grant that is only implicit in § 657(a)); *Marshall v. Weyerhaeuser Co.,* 456 F.Supp. 474, 477 (D.N.J.1978) (§§ 1337 and 1345 confer jurisdiction on district court in action by Secretary of Labor for search warrant); *Dunlop v. Burlington N.R.R.,* 395 F.Supp. 203, 204 (D.Mont.1975) (Secretary of Labor may seek order authorizing OSHA inspections under §§ 1337 and 1345, but respondent exempt); *Brennan v. Buckeye Indus., Inc.,* 374 F.Supp. 1350, 1352–53 (S.D.Ga. 1974) (§§ 1337 and 1345 provide jurisdiction in action seeking order requiring company to submit to inspection).

**38.** *See FTC v. Browning,* 435 F.2d at 100; *accord FTC v. Jim Walter Corp.,* 651 F.2d 251, 254–55 (5th Cir.1981).

**39.** *See Robertson v. Railroad Labor Bd.,* 268 U.S. at 626, 45 S.Ct. at 624:

But no reason is suggested why Congress should have wished to compel every person summoned either to obey the Board's administrative order without question, or to litigate his right to refuse to do so in such district, however remote from his home or temporary residence, as the Board might select.

**40.** We are particularly reluctant to do so in light of the fact that the other statutes administered by the DOE do not appear to confer extraterritorial subpoena enforcement jurisdiction on the district courts. *See* § 206 of the ESA, 12 U.S.C. § 1904 note (1976) (incorporated by 15 U.S.C. § 754(a)(1) (1976)) (authorizing enforcement actions only in "any district in which such person is found"); 15 U.S.C. § 772(e) (1976) (authorizing enforcement actions in "[a]ny appropriate United States district court"—a phrase that should be interpreted as "court of competent jurisdiction," *see* note 16 *supra* ).

## III. CONCLUSION

For the reasons set forth above, we hold that section 645 of the DOEOA, 42 U.S.C. § 7255 (Supp. IV 1980), does not incorporate the third paragraph of section 9 of the FTC Act, 15 U.S.C. § 49 (1976). Accordingly, we hold that section 645 does not confer on federal district courts either subject matter jurisdiction or the power of extraterritorial service of process in DOE subpoena enforcement proceedings. We reverse the District Court's holdings to the contrary, and we vacate the District Court's orders enforcing the DOE subpoenas directed at Hill, Pinkerton, Juren, and Cromey.

Although we reject the asserted basis of jurisdiction for the District Court orders, we do not direct dismissal of the enforcement petitions. In each of these cases, the Government asserted section 13(e) of the FEAA, 15 U.S.C. § 772(e) (1976), and section 206 of the ESA, 12 U.S.C. § 1904 note (1976) (incorporated by section 5(a) of the EPAA, 15 U.S.C. § 754(a)(1) (1976)), as alternative bases for the District Court's jurisdiction. After concluding that it had jurisdiction under section 645, the District Court found it "unnecessary to consider whether the above-referenced sections of the [ESA] and the [FEAA] confer enforcement jurisdiction upon this Court." *United States v. Hill*, 525 F.Supp. at 624; *see* Transcript of February 16, 1982 Hearing at 41–42, *reprinted in* Juren Appendix at 21–22. Because we reverse the District Court's holdings on section 645, it is now necessary to consider these alternative jurisdictional grants.

The Government has not suggested that the other provisions on which it relied confer extraterritorial enforcement jurisdiction, and our reading of these provisions would lead us carefully to scrutinize any conclusion that they do. *See* note 40 *supra*. But because the parties have not fully briefed the question, we decline to resolve it at this time. Instead, we remand the cases to the District Court. On remand, the parties will have the opportunity to address these and other related issues. In addition, the District Court will have an opportunity,

as necessary, fully to consider questions pertaining to subject matter jurisdiction, personal jurisdiction, and venue under these alternative subpoena enforcement provisions.

*So ordered.*